[Cite as *State v. Greeno*, 2014-Ohio-4718.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

      Plaintiff-Appellee

-vs-

HEATHER LYNN GREENO

      Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 14AP002

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Morgan County Court of Common Pleas, Case No. 13-CR-0009 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | October 22, 2014 |
| APPEARANCES: | |

For Plaintiff-Appellee

MARK J. HOWDYSHELL
Morgan County Prosecuting Attorney
19 East Main Street
McConnelsville, Ohio 43756

For Defendant-Appellant

PETER N. CULTICE
Cultice Law Firm
58 North Fifth Street
Zanesville, Ohio 43701

*Hoffman, P.J.*

{¶1} Defendant-appellant Heather Lynn Greeno appeals the August 27, 2013 Judgment Entry entered by the Morgan County Court of Common Pleas denying her motion to suppress. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On January 23, 2013, Appellant and her co-defendant had been under surveillance by the McConnelsville Police Department for several months as suspects in the operation of a methamphetamine laboratory at 659 Halcyon Avenue, McConnelsville, Ohio. The Fairfield County Municipal Court issued warrants against Appellant on July 18, 2012 and her co-defendant on December 31, 2012 for the unlawful purchase of pseudoephedrine. On January 23, 2013, the McConnelsville Police Department requested a search warrant to search said premises for the manufacture of methamphetamine. Based on affidavits filed by the McConnelsville Police Department, probable cause was found and a warrant was issued to search the premises. Through an oversight or clerical error, the search warrant was not signed by the judge.

{¶3} The officer surveilling the premises indicated Appellant and her co-defendant left the area in a vehicle which was subsequently stopped by the Morgan County Sheriff's Department. Appellant and her codefendant were placed under arrest based on the outstanding warrant from Fairfield County Municipal Court. They were transported to the Morgan County Jail for questioning and a search of 659 Halcyon Avenue was conducted pursuant to the unsigned search warrant.

{¶4} The vehicle in which Appellant and her co-defendant were travelling was towed by the McConnelsville Police Department to the impound lot approximately four blocks from the scene of the arrest. An inventory search of the vehicle was conducted for the purpose of protecting the property of the defendants. The officer performing the search used a standardized form to keep a record of the items recovered.

{¶5} At the inception of the inventory search, the officer noted, in plain view on the floor board of the vehicle, an envelope from American Electric Company addressed to Appellant at a different address in Morgan County of 5400 Mountville Road, Glouster, Ohio 45732. The envelope was located on the floor board of the vehicle. After finding the envelope, the officer questioned Appellant and her co-defendant at the police station, and learned they had rented a different residence and were preparing to move. The Morgan County Sheriff's Office requested consent to execute a search of the Mountville address. Appellant voluntarily signed a consent to search form.[1] A search was conducted of the Mountville address, and evidence was recovered, including chemicals used in the manufacture of methamphetamines.

{¶6} Appellant was arrested and indicted on one count of complicity to assemble and possession of chemicals used in the manufacturing of drugs, and one count of complicity to the illegal manufacturing of drugs.

{¶7} The trial court suppressed the search of the Halcyon address finding the search warrant void ab initio as it was not signed by a judge. The trial court further found the arrest of Appellant was pursuant to the outstanding warrants issued by the Fairfield County Municipal Court. Following the arrest, Appellant was taken to the

---

[1] Appellant's codefendant refused to execute a consent to search form.

Morgan County Sheriff's Office and questioned while the vehicle she was driving was taken to the impound lot by the McConnelsville Police Department. The trial court found this action separate and distinct from the activities in executing the search warrant at Halcyon Avenue.

{¶8} The trial court found,

{¶9} "Based upon the finding of this envelope in plain view, the defendant and her co-defendant were questioned at the sheriff's office and asked to consent to a search of the Mountville address. The co-defendant refused to execute a consent to search; however, the defendant agreed and executed a consent to search form authorizing the sheriff's office to search the premises. Based on this consent to search executed by the defendant, the search of the Mountville address was conducted and several incriminating items were secured by law enforcement officers."

{¶10} 8/27/13 Judgment Entry.

{¶11} Via Judgment Entry of August 27, 2013, the trial court denied the motion to suppress filed by Appellant.

{¶12} Appellant entered a plea of no contest to the charges of complicity to illegal assembly and possession of chemicals to manufacture drugs and complicity to the illegal manufacture of drugs. The trial court entered sentence on February 13, 2014.

{¶13} Appellant appeals, assigning as error:

{¶14} "I. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT THE OFFICERS' SEARCH OF APPELLANT GREENO'S VEHICLE WAS A PROPERLY CONDUCTED INVENTORY SEARCH OF AN IMPOUNDED VEHICLE AND NOT A PRETEXT FOR AN UNLAWFUL EVIDENTIARY SEARCH."

I.

**{¶15}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.*

**{¶16}** Appellant asserts the inventory search of the vehicle should be suppressed because the McConnelsville Police Department did not have a standardized procedure or policy. Appellant concedes such policy does not need to be in writing, but can be established by routine practice.

{¶17} In *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743, the Ohio Supreme Court analyzed and followed various United States Supreme Court decisions regarding inventory searches and held:

{¶18} "1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)

{¶19} "2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. ( *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)"

{¶20} The officer testified the envelope was found in plain view, not in a closed compartment or container in the vehicle.  Accordingly, the trial court need only find the State established the inventory search was conducted in good faith in accordance with reasonable standardized procedures or established routine.

{¶21} A policeman's "bare conclusory assertion that an inventory search was done pursuant to police department policy is not sufficient, standing alone, to meet the state's burden of proving that a warrantless search was reasonable * * *. Rather, the

evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy." *State v. Bozeman,* 2d Dist. No. 19155, 2002-Ohio-2588; *State v. Flynn*, 3rd Dist. No. 13-06-11, 2006-Ohio-6683.

**{¶22}** Here, an inventory search was performed by Patrolman Carley with the assistance of Patrolman Douglas McGrath.

**{¶23}** At the suppression hearing, Patrolman McGrath testified,

**{¶24}** "Q. The car is in the traveled portion of the streets in the Village of McConnelsville?

**{¶25}** "A. Yes.

**{¶26}** "Q. Was it appropriate to leave it there?

**{¶27}** "A. No.

**{¶28}** "Q. Would it be within the normal policy of McConnelsville Police Department that if a car is, for these purposes, abandoned in the traveled portion of the roadway, that it's towed and impounded until such time as it could be lawfully reclaimed?

**{¶29}** "A. Yes.

**{¶30}** "Q. Okay. And the car, automobile, to the best of your knowledge, at least by you, was not searched there when it was at the intersection of Tenth and McConnell.

**{¶31}** "A. I don't - - I don't - -

**{¶32}** "Q. There was no - -

**{¶33}** "A. I don't know of any - -

**{¶34}** "Q. My point is, there was no search of the car incident to arrest?

**{¶35}** "A. No.

**{¶36}** "Q. Okay.  There was no search of the car pursuant to search warrant?

**{¶37}** "A. Right.

**{¶38}** "Q. But later, the car was inventoried at the Fourteenth Street impound lot?

**{¶39}** "A. Yes.

**{¶40}** "Q. So questions have been asked by the defense attorneys, impound search, impound search.  Is there a distinction between a search and an impound inventory?

**{¶41}** "A. Yes, there is.

**{¶42}** "Q. What were you doing at the Fourteenth Street garage?  Were you searching the vehicle or were you inventorying the contents?

**{¶43}** "A. Inventory of the contents of the vehicle.

**{¶44}** "Q. And what is the purpose of doing an inventory of an impounded vehicle?

**{¶45}** "A. To document what's there, what's not there, to get things of value within the vehicle secured.

**{¶46}** "Q. And what is the public policy purpose of that inventory of an impounded vehicle?

**{¶47}** "A. Say that one more time.

**{¶48}** "Q. What is the public policy purpose of an inventory of an impounded vehicle?

{¶49} "A. I - - I would think to keep you from lawsuits from people saying that things were there that weren't there and, you know - -

{¶50} "Q. So you need to establish what is in the car. Correct?

{¶51} "A. Yes.

{¶52} "Q. So then when it's later claimed by the owner, if they say there was something there, you can look at your inventory sheet and say, no, we checked it and what you're claiming was not there?

{¶53} "A. Yes.

{¶54} "Q. Is that the purpose of - -

{¶55} "A. Yeah. That - - that would be the purpose and - - and maybe our own policy, if it's - - if it's anything that - - that I consider of value, it would come with me and get locked up rather than - -

{¶56} "Q. Okay.

{¶57} "A. - - stay in the car where it might be later - -

{¶58} "Q. Did you take things of - - greater value out of this particular car when you did the inventory?

{¶59} "A. Yes, we did. I believe there was a purse, laptop computer, some cell phones.

{¶60} "Q. Okay.

{¶61} "A. Things like that that I wouldn't feel comfortable leaving there.

{¶62} "Q. All right. You also took from the car some receipts and maybe an electric bill. Was there an electric bill in the car?

{¶63} "A. Yes.

**{¶64}** "Q. Did you take that, or did you just look at it?

**{¶65}** "A. We took those.

**{¶66}** "Q. Multiple electric bills or just one electric bill?  You used plural bills.

**{¶67}** "A. It was - - it was - - I guess it was a bill, slash - - it was a notification from the American Electric Power Company.

**{¶68}** "* * *

**{¶69}** "Q. And that was the car - - the automobile was lawfully impounded because it was left in the street with the owner and the occupant under arrest and transported away from the scene?

**{¶70}** "A. Yes.

**{¶71}** "MR. CULTICE:  Objection as to the phrasing of that question.

**{¶72}** "MR. HOWDYSHELL: This is cross-examination, Your Honor.  These are yes or no questions.

**{¶73}** "MR. CULTICE: Lawfully impounded, is he qualified to make that determination?

**{¶74}** "THE COURT: Well, strike the word lawfully.

**{¶75}** "BY MR. HOWDYSHELL:

**{¶76}** "Q. Was the automobile impounded pursuant to the policies and procedures of the Village of McConnelsville?

**{¶77}** "A. Yes.

**{¶78}** "Q. Was it inventoried according to the policies and procedures of the Village of McConnelsville?

**{¶79}** "A. Yes.

**{¶80}** "Q. And that - - that particular document, Exhibit B, along with some receipts and other papers and other personal property items were removed from the car and taken to the McConnelsville Police Department until recovered by whomever?

**{¶81}** "A. Yes.

**{¶82}** "Q. Did that Mountville Road address catch your eye when you saw it?

**{¶83}** "A. Yes.

**{¶84}** "Q. Why is that?

**{¶85}** "A. Because when - - where I thought they were living was 6 - - 659 Halcyon.  And of course, I had just come from searching the place and the apartment was basically empty, moved out of.  So that indicates that they had moved on me.

**{¶86}** "Q. All right.

**{¶87}** "A. So this address, you know, it's a second address of where - - (INAUDIBLE) - -you know, it was telling me that one - - the accounts were switching addresses.

**{¶88}** "Q. Okay.  Did you relate that information to any other officers?

**{¶89}** "A. Yes.  I - - I took this information and - - and took it to the sheriff's office, give it to Deputy Jenkins.

**{¶90}** "MR. HOWDYSHELL: No further questions, your Honor.

**{¶91}** "THE COURT: All right.  Any redirect?

**{¶92}** "MR. CULTICE: No, Your Honor.

**{¶93}** "MR. FOWLER: I have a couple, Your Honor.

**{¶94}** "THE COURT: All right.

**{¶95}** "RECROSS-EXAMINATION.

**{¶96}** "BY MR. FOWLER:

**{¶97}** "Q. Do - - does your department have a written inventory policy?

**{¶98}** "A. I - - I don't think there's a - - a written policy per se. We - - we have the standardized form that we fill out and - - and, like I say, we take the secured items to be locked up.

**{¶99}** "Q. So it's an oral inventory policy?

**{¶100}** "A. It's - - it's a form we fill out when we - - when we do a vehicle impound.

**{¶101}** "Q. But there's - - so there's no written directives to the officers indicating how they are to conduct an inventory search?

**{¶102}** "A. I've never - - I've never seen a written policy on that.

**{¶103}** "Q. Okay. So based on what you know of the - - whatever your inventory policy is, are you to search locked compartments in a vehicle?

**{¶104}** "A. I would.

**{¶105}** "Q. As part of an inventory search?

**{¶106}** "A. Yes.

**{¶107}** "* * *

**{¶108}** "RECROSS-EXAMINATION

**{¶109}** "BY MR. HOWDYSHELL:

**{¶110}** "Q. Where was the AEP letter?

**{¶111}** "A. Laying on the passenger floorboard.

**{¶112}** "Q. It wasn't in a locked compartment? It was just in plain view? If you look in the car, there it is?

**{¶113}** "A. You could have looked through the window and seen that.

**{¶114}** "Q. And are inventories of impounded automobiles, whether there is a written policy or not, done consistently with every vehicle that's impounded by the Village of McConnelsville?

**{¶115}** "A. Yes.

**{¶116}** "Q. You do them all the same way?

**{¶117}** "A. Yeah."

**{¶118}** Tr. at p. 45-49; 52-55; 57.

**{¶119}** Based upon the above, we find the trial court did not err in denying Appellant's motion to suppress. Patrolman McGrath testified as to the McConnelsville Police Department's inventory search standardized, routine policy and how he conducted the inventory search herein. Further, the AEP letter was found within plain view, not a closed compartment.

**{¶120}** Appellant's sole assignment of error is overruled, and the August 27, 2013 Judgment Entry entered by the Morgan County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur