[Cite as *State v. Whitlatch*, 2017-Ohio-806.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00149 |
| LESLIE WHITLATCH | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County Court of Common Pleas, Case No. 2016CR0764

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      March 6, 2017

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Stark County Prosecutor
BY: RONALD MARK CALDWELL
110 Central Plaza South
Canton, OH 44702

For Defendant-Appellant

STEVEN REISCH
Stark County Public Defender
201 Cleveland Avenue S.W., Ste. 104
Canton, OH 44702

*Gwin, P.J.*

{¶1}    Appellant, Leslie Whitlatch ["Whitlatch"] appeals the July 13, 2016 judgment of the Stark County Court of Common Pleas, Stark County, Ohio overruling her motion to suppress.

*Facts and Procedural History*

{¶2}    On April 14, 2016, around seven o'clock that night, Alliance Police Officer Christopher McCord was called to assist another officer with a shoplifter caught at the Alliance Wal-Mart store.   Whitlatch was detained there in a small office after being arrested inside the store for petty theft.   Upon arriving at the store, McCord interviewed Whitlatch about how she had arrived at the store since she was not from the Alliance area.  Whitlatch denied driving there, and initially claimed that a friend had dropped her off.  This story changed several times, however, with Whitlatch telling McCord that she had taken the bus, that a family member had dropped her off, to someone else had dropped her off.   She, however, denied driving there.   With these varying answers, McCord had Wal-Mart pull the security recording of the parking lot.  T. at 5-7; 8.

{¶3}    The video recording showed Whitlatch driving a white van into the Wal-Mart parking lot and parking this van before entering the store.  T. at 7.

{¶4}    As a result, McCord went outside to the parking lot and found this white van. McCord saw on the passenger seat of the van a receipt with Whitlatch's name on it.  The receipt was from a cell phone store where Whitlatch had made a purchase earlier in the day.  T. at 7.

{¶5}    McCord then checked Whitlatch's name and found that she had an arrest warrant for her, and that she was under multiple driving suspensions. The video from the

Officer's cruiser camera shows McCord typing some information into his cruiser's lap top computer after he parked behind the subject's vehicle. (Exhibit A). A voice can be heard saying "suspended license." (Exhibit A). Whitlatch's sister owns the vehicle. (Exhibit A).

{¶6} McCord relayed this information to Wal-Mart, who told him that the store did not want her van on its property. Based on the fact that Whitlatch had driven there with a suspended license and that Wal-Mart had given her a trespass notice and wanted her vehicle off its property, McCord took her keys and proceeded to her van in order to impound it. As part of the impoundment policy of the Alliance Police Department, McCord opened a door to the van and immediately smelled the overwhelming odor of chemicals. From his training and experience — which included participating in some 40 meth lab investigations of actual manufacturing, as well as being around more than 150 actual meth-cooking vessels, labs, or waste — McCord knew immediately that the smell was associated with the manufacturing of methamphetamine. The harsh and unique smell took his breath away, so he opened the doors of the van to air out the vehicle. The inventory search reveals, among other things, a heavy-duty trash bag that contained two cooking vessels for a one-pot meth lab. T. at 8-12.

{¶7} Whitlatch was charged by indictment with one count each of illegal manufacturing of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, and petty theft.

{¶8} Whitlatch filed a motion to suppress the items seized from the van, arguing that the police did not have authority to search her parked van based upon her arrest inside of Wal-Mart for shoplifting.

{¶9} Whitlatch argued that McCord's police report makes no mention of Whitlatch having a suspended operator's license nor was she charged with Driving under Suspension. The only reason given by McCord for searching the vehicle on the cruiser video and in his police report is the fact that Wal-Mart wants the van removed from its property.

{¶10} The trial court, after conducting an evidentiary hearing, overruled Whitlatch's suppression motion by judgment entry.

{¶11} In its judgment entry, the trial court found that the police had searched Whitlatch's van on the basis that she was observed driving the van to Wal-Mart despite having a suspended driver's license. Since her van was going to be towed pursuant to Alliance City Ordinance 303.08(a)(9), the police search was an inventory search pursuant to department policy regarding towed vehicles. The trial court specifically ruled in its judgment entry, "The City of Alliance police department's search of Leslie Whitlatch's vehicle was an inventory search of a lawfully impounded vehicle, authorized by a municipal ordinance permitting impoundment of a vehicle located in a public place that has been operated by a person whose license was suspended."

*Assignment of Error*

{¶12} Whitlatch raises one assignment of error,

{¶13} "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE SEARCH OF THE VEHICLE SHE HAD OPERATED."

*Law and Analysis*

{¶14} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of

fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

**Inventory search.**

{¶15} "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen or vandalized property, and (3) protect police from dangerous instrumentalities." *State v. Mesa*, 870 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, *citing South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment

warrant requirement, including the standard of probable cause, are not implicated." *Mesa at 108, citing Opperman* at 370. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness." *Mesa* at 108.

{¶16} In *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743(1992), the Ohio Supreme Court analyzed and followed various United States Supreme Court decisions regarding inventory searches and held:

> 1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (S*outh Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)

> 2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. (*Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)"

*Accord, State v. Greeno*, 5th Dist. Morgan No. 14AP002, 2014-Ohio-4718, ¶ 18-19.

{¶17} The Ohio Supreme Court has stated, "the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered during the inventory search." *Hathman*, 65 Ohio St.3d at 408, 604 N.E.2d 743. It went on to state that,

> If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice *specifically governing the opening of such containers.*

*State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992) (emphasis added), paragraph two of the syllabus.

**Lawful Impoundment**

{¶18} "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706(1973). It is reasonable of police to exercise their discretion and impound a vehicle, rather than leave it, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739(1987). "This discretion is necessarily limited to circumstances in which the officer is authorized to impound the vehicle." *State v. Huddleston*, 173 Ohio App.3d 17, 2007–Ohio–4455, ¶ 14, *citing Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007–Ohio–1103, and *State v. Taylor* (1996), 114 Ohio App.3d 416. "[A]uthority to impound should never be assumed," however. *Taylor* at 422. We have identified several situations in which police have

authority to impound a vehicle, among them, "when impoundment is [ ] authorized by statute or municipal ordinance." Id.; *Accord, State v. Saunders,* 5th Dist. Fairfield No. 14-CA-57, 2015-Ohio-3535, ¶12.

{¶19} Ordinance 303.08 of the Codified Ordinances of Alliance, Ohio provides in relevant part,

(a) Police officers are authorized to provide for the removal of a vehicle under the following circumstances:

* * *

(9) When any vehicle has been operated by any person who is driving without a lawful license or while his license has been suspended or revoked and is located upon a public street or other property open to the public for purposes of vehicular travel or parking.

{¶20} It is undisputed that, at the time Whitlatch was arrested for shoplifting, her driver's license was under suspension. Whitlatch was seen, via the Wal-Mart security camera, operating her white van while having a suspended license. Thus, the police had the legal authority to impound the vehicle and conduct an inventory search.

{¶21} The sole assignment of error is overruled.

{¶22}   The judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Wise, John J., concur