[Cite as *State v. Pennington*, 2020-Ohio-757.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019CA00092 |
| JESSE PENNINGTON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Stark County
Court of Common Pleas, Case No.
2019CR095

JUDGMENT: Reversed and Remanded

DATE OF JUDGMENT ENTRY: March 2, 2020

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Stark County Prosecutor
BY: RONALD MARK CALDWELL
110 Central Plaza South
5th Floor
Canton, OH 44702

For Defendant-Appellant

KRISTINA POWERS-GRIFFITHS
Stark County Public Defender
201 Cleveland Avenue S.W., Ste 104
Canton, OH 44702

*Gwin, J.*

{¶1} Defendant-appellant Jesse Pennington ["Pennington"] appeals the May 20, 2019 judgment of the Stark County Court of Common Pleas, Stark County, Ohio overruling his motion to suppress.

*Facts and Procedural History*

{¶2} On December 30, 2019, at 5:47 pm, Officer Matthew Krueger of the Massillon Police Department observed a vehicle driving over the posted speed limits in a 25 mph zone. The officer testified that he was driving 25 mph and one car in front of him was driving the posted speed. The vehicle in question was pulling away. The vehicle was a red, two door Chevrolet. When the officer ran the license plate, the plate indicated that the vehicle should be a gray, two door Chevrolet. As a result, the officer stopped the vehicle. The vehicle was stopped approximately one mile from where the officer observed the speeding infraction.

{¶3} On approaching the vehicle, Officer Kruger noted that there were only two people inside the stopped vehicle — the driver and one passenger (Pennington). Officer Kruger determined that the driver of this vehicle only had a valid temporary driving permit, and therefore checked Pennington's ID in order to determine whether he could drive the car away at the conclusion of the traffic stop. However, the license check revealed that Pennington's driver's license was under suspension.

{¶4} The officer stated that he smelled an odor of alcohol. The driver then advised the officer that there was an open container in his backpack in the back seat. The driver then gave the officer consent to search the automobile. The driver was then removed from the vehicle "because of the open container." The driver was placed in the

cruiser. Once the driver was placed inside the police cruiser, Officer Kruger then had Pennington exit the vehicle and join the driver in the backseat of the cruiser. Officer Kruger asked Pennington "if he knew of anything illegal that was in the vehicle and he said 'no'". (T. at 11-12).

{¶5} Officer Kruger searched inside the vehicle and found an open container of alcohol inside a backpack behind the driver's seat. The alcohol had spilled from this bottle. As part of his search of the passenger compartment of the car, Kruger looked in the front and saw a drawstring-type backpack bag on the floor of the front passenger seat (where Pennington had been sitting). The drawstring was pulled shut. The officer did not notice the backpack prior to Pennington exiting the vehicle. The officer admitted that he would not have allowed Pennington to remove the backpack from the vehicle. However, he had no specific recollection as to whether or not Pennington attempted to remove the backpack from the automobile. Officer Kruger opened the bag and found inside some marijuana, a marijuana pipe, a grinder, and six amphetamine pills. Because the bag was on the passenger seat floor where Pennington had been seated, Officer Kruger returned to his cruiser, read Pennington his *Miranda* rights, which Pennington waived, and asked Pennington about the pills. Pennington admitted to Kruger that the bag and the drugs belonged to him, that the pills were Adderall for which he did not have a prescription. Pennington was arrested for possessing the drugs.

{¶6} Officer Kruger testified during the suppression hearing that he did not conduct an inventory search of the car because he was not impounding the vehicle. Officer Kruger did not charge the driver of the vehicle for the open container or the alcohol. The driver

was charged only with the speeding violation.  Officer Kruger released the car to the driver's mother at the scene.

{¶7}    The trial court overruled the motion to suppress by judgment entry:

Upon review, the Court finds that Officer Kruger was justified in stopping the vehicle for the traffic violation.  Once he made contact with the occupants and observed the odor of alcohol, he was then justified in investigating for a possible alcohol related offense.  The Court further finds that Officer Kruger obtained valid consent to search the vehicle, and that his request that the occupants exit the vehicle prior to the search was reasonable.  Contrary to the Defendant's assertions, the Court finds no evidence that police prevented the Defendant from retrieving his bag.  Rather, the bag remained inside the vehicle, which was searched subject to valid consent provided by the driver.  The Court further finds that probable cause did exist to search the vehicle and containers inside in which alcohol could be located, based upon the odor of alcohol coming from the vehicle as well as the finding of one open container in a bag behind the driver seat.

*State v. Pennington*, Stark County Court of Common Pleas Case No. 2019-CR-0095, Judgment Entry, filed May 20, 2019 at 3.

{¶8}    The trial court further held that the search was valid under the inevitable discovery doctrine.  "Therefore," the trial court ruled, "even if the Court would find that the officers did not have authority to search the defendant's car and its containers, the contraband found within is still admissible because it inevitably would have been found during the course of the search, which would have been conducted according to the

Massillon Police Department's procedures." *State v. Pennington*, Stark County Court of Common Pleas Case No. 2019-CR-0095, Judgment Entry, filed May 20, 2019 at 4.

*Assignment of Error*

{¶9} Pennington raises one Assignment of Error,

{¶10} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

*Law and Analysis*

{¶11} In his sole assignment of error, Pennington argues that the search of his backpack was an unconstitutional warrantless search.

**STANDARD OF APPELLATE REVIEW.**

{¶12} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534

U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**ISSUE FOR APPEAL**.

*A. Whether the officer's search of Pennington's backpack pursuant to the driver's consent to search the car was constitutionally permissible.*

{¶13} The trial court ruled that the driver's consent to search the car gave the officer authority to search the closed backpack of Pennington located on the floor of the passenger seat where Pennington had been seated.

{¶14} Although the Fourth Amendment may permit a brief detention of property on the basis of only "reasonable, articulable suspicion" that it contains contraband or evidence of criminal activity, *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983), it proscribes—except in certain well-defined circumstances—the search of that property unless accomplished pursuant to judicial warrant issued upon probable cause. *See, e.g., Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989); *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). That guarantee protects alike the "traveler who carries a toothbrush and a few articles of clothing in a paper bag" and "the sophisticated executive with the locked attaché case." *United States v. Ross*, 456 U.S. 798, 822, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982). Thus, "[w]hen a defendant moves to suppress

evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 18*, citing Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974).

{¶15} No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242(2002) (stating that "[p]olice officers act in full accord with the law when they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854(1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen* (1990), 50 Ohio St.3d 206, 211, 553 N.E.2d 640.

{¶16} The driver of the car had authority to allow Officer Kruger to search *the car.* The driver admitted and told the officer that the open bottle of liquor was in the driver's backpack in the backseat  The state presented no evidence that it was illegal for Pennington to possess or to consume alcohol. Thus, there was no basis for conducting a "probable cause" search of closed containers not belonging to the driver in a search for alcohol. Therefore, the question in the case at bar is whether the driver's consent to search the car and the driver's own  backpack extended to allow Officer Kruger to search Pennington's closed backpack located on the passenger side floorboard where Pennington had been seated.

*1. For Consent of a Third Party to Validate a Search, the State Must Prove the Third Party Had Joint Access, Control, or Common Authority Over the Subject of the Search.*

{¶17} To say that the driver consented to a search of the car is not necessarily to say that he consented to a search of the items it contained. In *United States v. Matlock*, 415 U.S. 164, 171-72, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Supreme Court held that when the government seeks to justify a warrantless search by proof of voluntary consent, in the absence of proof that consent was given by the defendant, it "may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." In describing what constitutes common authority, the Supreme Court explained, "[c]ommon authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property [.]" Id. at 171, n. 7, 94 S.Ct. 988. Rather, the Court said, common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Id. On this basis, a resident's consent to search his home is not necessarily consent to search a closed object within the home. *See United States v. Karo*, 468 U.S. 705, 725-26, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring) ("A homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home."). *See also, United States v. Waller,* 426 F.3d 838, 845 (6th Cir. 2005).

{¶18} A valid consent to search the closed container must come from one who has common authority over the effects sought to be inspected, one who has mutual use

of the property, and one who generally has joint access or control for most purposes. *Karo,* 468 U.S. at 725-26, 104 S.Ct. 3296. The government bears the burden of establishing the effectiveness of a third party's consent. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). As one court has noted,

> Suppose Rodriguez had checked his briefcase with United Airlines for a flight. United could have consented to a search of its baggage handling facilities, in which passengers anyway lack privacy interests; no one thinks that United could consent to a search of all luggage in its possession. So too with checkrooms at restaurants, parcels in transit with express companies, and other containers in public places. Many a closed container is accessible; opening it requires justification, *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), just as turning over a stereo system to observe its serial number requires justification. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

* * *

*United States v. Rodriguez,* 888 F.2d 519, 523(7th Cir. 1989).

{¶19}　In the case at bar, the trial court did not find, nor did the state argue, that the driver had authority to consent to a search of Pennington's backpack, or that the driver gave such consent to Officer Kruger. Officer Kruger did not believe that the driver had common authority over the backpack found on the passenger side floor. Upon finding contraband in that backpack, Officer Kruger immediately returned to the cruiser and advised Pennington of his *Miranda* rights, "because the bag was sitting on the floorboard

where his feet were…." (T. at 15-16).  Officer Kruger did not ask Pennington for consent to search his backpack.

{¶20}  In this case, it is obvious that the driver, who consented to the search of his car in general, did not have common authority specifically with regard to Pennington's backpack.  On these facts, we conclude that the driver did not have mutual use of the backpack, nor did he have joint access and control for most purposes.  Thus, he did not have common authority to grant permission to search Pennington's backpack.

*2. Inevitable discovery.*

{¶21}  In the case at bar, the court further justified the search based upon inevitable discovery because a search "would have been conducted according to the Massillon Police Department's procedures."

{¶22}  In the case at bar, no contention has been raised that the officer's searching of Pennington's backpack involved a self-protective action necessary for the officer's safety. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  *Smith v. Ohio*, 494 U.S. 541, 542, 110 S.Ct. 1288, 1289, 108 L.Ed.2d 464 (1990).  Neither the driver nor Pennington had been arrested prior to the search of the car or Pennington's backpack. Officer Kruger admitted that he did not conduct an inventory search of the car.  (T. at 16).

{¶23}  In the case at bar, the state argues that the Massillon Police Department had a policy of doing an inventory search of the passenger compartment of a motor vehicle "whenever it was going to be turned over to a third party."  [Appellee's Brief at 12].

{¶24}  "Inventory searches involve administrative procedures conducted by law enforcement officials and are intended to (1) protect an individual's property while it is in police custody, (2) protect police against claims of lost, stolen, or vandalized property, and

(3) protect police from dangerous instrumentalities." *State v. Mesa*, 870 Ohio St.3d 105, 108, 1999-Ohio-253, 717 N.E.2d 329, *citing South Dakota v. Opperman*, 428 U.S. 364, 369 (1976). "Because inventory searches are administrative caretaking functions unrelated to criminal investigations, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated." *Mesa* at 108, *citing Opperman* at 370. "Rather, the validity of an inventory search of a lawfully impounded vehicle is judged by the Fourth Amendment's standard of reasonableness." *Mesa* at 108.

{¶25} In *State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743(1992), the Ohio Supreme Court analyzed and followed various United States Supreme Court decisions regarding inventory searches and held:

1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1, followed.)

2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. (*Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93

L.Ed.2d 739; and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109

L.Ed.2d 1, followed.)"

*Accord, State v. Greeno*, 5th Dist. Morgan No. 14AP002, 2014-Ohio-4718, ¶ 18-19.

{¶26} The Ohio Supreme Court has stated, "the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered during the inventory search." *Hathman*, 65 Ohio St.3d at 408, 604 N.E.2d 743. It went on to state that,

> If, during a valid inventory search of a lawfully impounded vehicle, a
> law-enforcement official discovers a closed container, the container may
> only be opened as part of the inventory process *if there is in existence a*
> *standardized policy or practice specifically governing the opening of such*
> *containers.*

*State v. Hathman*, 65 Ohio St.3d 403, 604 N.E.2d 743 (1992), paragraph two of the syllabus. (Emphasis added).

{¶27} The Ohio Supreme Court in *Hathman* found that there was "no evidence in [the] case of any standardized policy or practice of the Ohio State Highway Patrol specifically governing the opening of closed containers found during inventory searches." Id. The state trooper testified "concerning the scope of an inventory search related to the areas (or parts) of a vehicle which are normally searched, i.e., the interior, trunk, glove box, etc." Id. at 408. However, the Supreme Court found that the state trooper's testimony fell "short of establishing that some policy or practice of the Highway Patrol governed the opening of the closed containers." The court held that the state trooper's

opening of the closed containers found during the inventory search was constitutionally impermissible, and that the evidence seized as a result had to be suppressed.

{¶28}  In the case at bar, the following exchange occurred between the trial court and Officer Kruger,

[The Court]: Okay.  With regard to this policy or this issue that Ms. Day brought up about releasing the car to a third party you said, and I want to make sure I understand this right, that before you would release it to a third party, regardless of what the nature of the stop was, that it's your policy that you would search at least the passenger compartment of the vehicle before turning it over to them?

[Officer Kruger]: Correct.

[The Court]:  Okay.  Is that like a Massillon Police Department policy or is that just something you do?

[Officer Kruger]: There's a written policy for releasing it *to a tow truck driver.*

[The Court]:  So it's sort of the same thing?

[Officer Kruger]: *Just me going through it just to insure that that person wasn't taking anything illegal with them.*

T. at 27-28.  (Emphasis added).

{¶29}  Officer Kruger testified that there is a written policy concerning an inventory search of an impounded vehicle.  Officer Kruger did not state that a standard procedure to conduct a warrantless search of a car and to open closed containers found within the car that was not impounded was reduced to a written policy by the Massillon Police

Department. The state did not introduce a written policy. *See, State v. Banks-Harvey,* 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶36.

{¶30} We find no evidence that the state proved the Massillon Police Department has a standardized policy or practice for conducting a warrantless, non-inventory search and opening of closed containers inside a vehicle stopped for any traffic violation before the vehicle is released to a third party. Officer Kruger's testimony regarding inventory searches is not applicable in the case at bar because Officer Kruger did not conduct an inventory search of the vehicle. (T. at 16). In any event, the mere adoption of a policy by the Massillon Police Department to conduct a warrantless search of a vehicle and open closed containers cannot authorize unconstitutional police action that violates the Fourth Amendment and Section 14 of the Ohio Constitution.

**CONCLUSION.**

{¶31} The driver did not have mutual use of the backpack, nor did he have joint access and control for most purposes. Thus, he did not have common authority to grant permission to search Pennington's backpack.

{¶32} We find no evidence that the state proved the Massillon Police Department has a standardized policy or practice for conducting a warrantless, non-inventory search and opening of closed containers inside a vehicle stopped for a traffic violation before the vehicle is released to a third party. In any event, the mere adoption of a policy by the Massillon Police Department to conduct a warrantless search of a vehicle and open closed containers cannot authorize unconstitutional police action that violates the Fourth Amendment and Section 14 of the Ohio Constitution.

{¶33} Pennington's sole Assignment of Error is sustained.

{¶34}  The judgment of the Stark County Court of Common Pleas is reversed and this case is remanded to that court for further proceedings in accordance with this Decision and the Law.


By Gwin, J.,

Hoffman, P.J., and

Wise, Earle, J., concur