O'Neill, J.
*368 {¶ 1} This case addresses whether a law-enforcement agency's policy that an arrestee's personal effects must accompany the arrestee to jail can, on its own, justify the warrantless retrieval of an arrestee's personal effects from a location that is protected under the Fourth Amendment to the United States Constitution. We conclude that it cannot. We further conclude that a search of personal effects obtained as a result of following such a policy is not a valid inventory search. We further conclude that in this case, the exclusionary rule applies to require the suppression of the evidence obtained during the unconstitutional search. Accordingly, we reverse the judgment of the court of appeals, which upheld the trial court's denial of the appellant's motion to suppress the evidence found during the search of her purse, and we vacate the appellant's convictions and sentence.
*369 Facts and Procedural History
{¶ 2} This case arises out of a lawful traffic stop. On October 21, 2014, an Ohio State Highway Patrol trooper stopped appellant, Jamie Banks-Harvey, for speeding. The stop was video and audio recorded, but because of the way the cars were positioned, the vehicle appellant was driving cannot be seen in the video after she pulled over. The vehicle had three occupants, appellant, her boyfriend, Charles Hall, who owned the vehicle, and Shannon Holcomb. When the trooper asked appellant for her driver's license, she told him that she did not have one. Instead, appellant reached into her purse, retrieved her *266 state of Ohio identification card, and gave it to the trooper. She explained that she was driving Hall's vehicle because Hall had hurt his hand and she was taking him to get medical attention. Appellant also told the trooper that she and Hall lived together.
{¶ 3} The trooper requested licenses from Hall and Holcomb, but neither of them were carrying their licenses, so he collected their Social Security numbers for identification purposes. The trooper asked appellant to step out of the vehicle. He performed a pat-down search of appellant and placed her in the back seat of his cruiser. Appellant did not have her purse with her when she was placed in the trooper's cruiser; it remained in Hall's vehicle. The trooper's computer alerted him that appellant possibly had an outstanding warrant for her arrest for possession of heroin in Montgomery County and that Holcomb possibly had an outstanding warrant for her arrest for possession of drug paraphernalia in Warren County. Hall, the vehicle owner, had no outstanding warrants for his arrest.
{¶ 4} A local police officer arrived on the scene while the trooper was waiting for confirmation of the warrants. The trooper told the officer that appellant and Holcomb both had outstanding warrants for their arrest and that Hall, the vehicle owner, did not. The trooper then approached Hall and told him that both appellant and Holcomb had drug-related warrants for their arrest. He asked Hall whether appellant and Holcomb used heroin regularly, and he told Hall that it was within his discretion to impound Hall's vehicle but that he had not yet decided whether he would do so. Then he asked whether he and the officer could search Hall's vehicle. Hall did not grant consent. Upon confirmation of the warrants, the trooper arrested Holcomb and put her in the back of his cruiser with the appellant. At this point, both appellant and Holcomb were under arrest on the outstanding warrants and were going to be taken to jail.
{¶ 5} The trooper then entered Hall's vehicle, retrieved appellant's purse, placed it on the hood of his cruiser, and searched it. As he searched the purse, the trooper laid the items from the purse on the hood of his cruiser. Appellant's purse contained, among other things, a baggy with ten yellow pills, three needles, one of which contained brown liquid, three clear capsules filled with brown powder, *370 and three clear capsules filled with white powder. The trooper showed the officer the drugs he had found in appellant's purse, and then the officer said that he might have observed a capsule in Hall's vehicle. The officer then searched the vehicle and found clear capsules and a needle. No one was arrested or charged based upon anything found in the search of Hall's vehicle. Hall's vehicle was not impounded, and Hall was permitted to drive it away.
{¶ 6} Appellant was charged with felony possession of drugs and misdemeanor possession of drug paraphernalia and drug-abuse instruments based on the items found in her purse. She filed a motion to suppress the evidence, arguing that the search of her purse violated her rights under the Fourth Amendment to the United States Constitution. In its response to the motion to suppress, appellee, the state of Ohio, argued that the evidence found in appellant's purse should not be suppressed, because it fell within at least one of the following three exceptions to the Fourth Amendment's search-warrant requirement: (1) the search-incident-to-arrest exception, (2) the plain-view exception, and (3) the inventory-search exception.
{¶ 7} The trial court rejected each of the three rationales the state put forth to justify the warrantless search of appellant's *267 purse. The court held that under Arizona v. Gant , 556 U.S. 332, 351, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the search of appellant's purse was not a lawful search incident to arrest. The court found that the trooper retrieved and searched the purse after he had handcuffed and secured appellant in his vehicle and so she was not within reach of her purse when he retrieved and searched it.
{¶ 8} The trial court held that the plain-view exception, under Minnesota v. Dickerson , 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), did not justify the search of appellant's purse, because there was no testimony to suggest that appellant's purse possessed an incriminating character that was immediately apparent. And the trial court rejected the state's argument that this was a valid inventory search under South Dakota v. Opperman , 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), because the car that contained appellant's purse was not impounded.
{¶ 9} Despite rejecting the state's arguments, the trial court nevertheless denied appellant's motion to suppress. The trial court concluded that regardless of the fact that the trooper did not have probable cause to search the vehicle at the time he searched appellant's purse, the officer had probable cause to search the car based on his observation of the capsule in the car and the suspicious behavior of the occupants. Thus, the court held, the contraband in appellant's purse would inevitably have been discovered in the search of the vehicle. United States v. Ross , 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
*371 {¶ 10} Following the trial court's denial of her motion to suppress, appellant pled no contest to the charges. On August 7, 2015, she was sentenced to three years of community control, and she is subject to a one-year prison sentence if she violates the community-control sanctions. She was also ordered to, among other things, complete inpatient drug treatment and to serve 90 days of electronically monitored house arrest after her release from the drug-treatment facility.
{¶ 11} Appellant appealed her convictions, arguing that the trial court had erred in denying her motion to suppress. She maintained her argument that the evidence had been seized in violation of her Fourth Amendment rights. The state disagreed, arguing that the trial court had not erred in denying appellant's motion to suppress because (1) the drugs would inevitably have been discovered in a search of the vehicle, (2) the drugs were discovered during a valid inventory search of the purse, and (3) the drugs would inevitably have been discovered during an inventory search of the purse at the jail.
{¶ 12} The appellate court upheld the reasonableness of this search under the Fourth Amendment, but its reasoning was different than the trial court's. The appellate court rejected the trial court's conclusion that the evidence would inevitably have been discovered during a valid search of the vehicle. The court found that the state had not produced any evidence to establish that the officer was pursuing a line of investigation involving Hall's car prior to the search of appellant's purse. The appellate court noted that the officer did not testify at the hearing and that the recording offered by the state established that the trooper found the syringes and drugs in appellant's purse before the officer informed the trooper that he had seen a capsule in Hall's car. Nonetheless, the appellate court upheld the denial of the motion to suppress, concluding that the retrieval of appellant's purse from the car was done pursuant to a standard Ohio State Highway Patrol policy and that the drugs and drug paraphernalia found in *268 appellant's purse were admissible as the fruits of a valid inventory search of the purse once it was in police custody.
{¶ 13} This court accepted appellant's appeal on the following proposition of law:
Because the mere adoption of a policy by the Highway Patrol to retrieve and inventory the belongings of an arrested person cannot authorize unconstitutional police action, the warrantless entry into a car to retrieve the purse of an already-arrested person and the subsequent warrantless removal and search of that purse violates the Fourth Amendment and Section 14, Article I of the Ohio Constitution.
*372 The state asserts the following proposition of law:
When conducted pursuant to standard policy or procedure, the seizure and search of an arrestee's purse before the arrestee is taken to jail or incarcerated falls within the inventory search exception to the warrant requirement and does not violate the Fourth Amendment of the United States Constitution or Article I, Section 14 of the Ohio Constitution. When the State's evidence establishes that the seizure and search fall within the inventory search exception and further establishes that the contraband found in the purse would have been inevitably discovered in a lawful search of the vehicle and/or a search of the arrestee's belongings at the jail, a trial court properly does not suppress the evidence.
See 146 Ohio St.3d 1502, 2016-Ohio-5792, 58 N.E.3d 1173.
Standard of Review of a Ruling on a Motion to Suppress
{¶ 14} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. State v. Burnside , 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. See State v. Fanning , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). But the appellate court must decide the legal questions independently, without deference to the trial court's decision. Burnside at ¶ 8.
The Fourth Amendment
{¶ 15} The Fourth Amendment to the United States Constitution provides:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
{¶ 16} This court has held that in felony cases, Article I, Section 14 of the Ohio Constitution provides the same protection as the Fourth Amendment to the United States Constitution. State v. Jones , 143 Ohio St.3d 266, 2015-Ohio-483, 37 N.E.3d 123, ¶ 12.
{¶ 17} The Fourth Amendment proscribes all unreasonable searches and seizures. Ross , 456 U.S. at 825, 102 S.Ct. 2157, 72 L.Ed.2d 572. It is a restraint on *269 *373 the government. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." (Footnote omitted.) Katz v. United States , 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
{¶ 18} When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement. Athens v. Wolf , 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974).
{¶ 19} Here, the state asserts that the search of appellant's purse in this case fits within the inventory-search exception to the Fourth Amendment's warrant requirement. We disagree for the reasons explained below.
Inventory-Search Exception
{¶ 20} The inventory-search exception is a well-defined exception to the Fourth Amendment's warrant requirement. Illinois v. Lafayette , 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). An inventory search is not subject to the Fourth Amendment's warrant requirement or a probable-cause review, because it is a search that is made for administrative reasons and is unrelated to a criminal investigation. State v. Mesa , 87 Ohio St.3d 105, 109, 717 N.E.2d 329 (1999) (upholding the search of an armrest console as part of the inventory search of a lawfully impounded vehicle).
{¶ 21} As a practical matter, the personal effects with a person at the time of his or her arrest must be stored while the person is in jail. And because the police are potentially responsible for the items, they are permitted to search and inventory the personal effects that come into their custody. Colorado v. Bertine , 479 U.S. 367, 373, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (upholding the search of a backpack in a vehicle as part of an inventory search of a lawfully impounded vehicle). This administrative search and inventory is intended to help guard against claims of theft or careless handling and also protects the police from dangerous instruments. Id. Accord Lafayette at 647, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (upholding the inventory search of an arrestee's shoulder bag conducted at the police station). Even if less intrusive means of protecting property are available, such as sealing items in a plastic bag and placing them in a secured locker rather than searching and inventorying them, it is not unreasonable for police, as part of routine procedure incident to incarceration, to search any article or container in the arrestee's possession in accordance with established inventory procedures. Lafayette at 647-648, 103 S.Ct. 2605.
{¶ 22} Based on the trooper's testimony at the suppression hearing, the trial court found that it is the policy of the Ohio State Highway Patrol to transport an *374 arrestee's property with the arrestee, but no written policy was offered as evidence at the hearing. The question in this case is not whether the purse was taken from the car pursuant to a standardized law-enforcement policy, but whether such a policy was sufficient justification for the warrantless retrieval of the purse from the car. We conclude that it was not and therefore that the subsequent search of the purse did not qualify as a valid inventory search, because the purse had not lawfully come into the custody of the police.
{¶ 23} Certainly we take no issue with the reasonableness of an administrative policy requiring the search and inventory of personal items that necessarily come *270 into police custody as a result of an arrest. Indeed, R.C. 2981.11 requires law-enforcement agencies to keep safe any lawfully seized property that comes into their custody. However, this is not a case in which personal items came into the custody of the police as an incident of lawful police conduct. In this case, the trooper retrieved a personal item belonging to an arrestee from a place that is protected under the Fourth Amendment (the car). At the time the trooper retrieved appellant's purse, her identity had already been confirmed and she was handcuffed and under arrest in the trooper's vehicle. Neither her purse, nor the vehicle that contained her purse, came into police custody as a result of her arrest. On these facts, the state has failed to show that this search fits under the inventory-search exception to the Fourth Amendment's warrant requirement.
{¶ 24} We note that had the trooper obtained the purse in a legal way, such as retrieving it from the car at appellant's request, we would have been compelled to reach a different result. Likewise, if appellant had been arrested on the street with her purse on her person, we would have been compelled to reach a different result. But a law-enforcement policy that an arrestee's personal effects go with them to jail, does not, by itself, authorize an officer to retrieve the arrestee's personal effects from a place that is protected under the Fourth Amendment.
Exclusionary Rule
{¶ 25} The Fourth Amendment says nothing about suppressing evidence obtained in violation of its protections. Nevertheless, the United States Supreme Court created the exclusionary rule, which precludes the use in a criminal proceeding of evidence obtained in violation of the Fourth Amendment, "to 'compel respect for the constitutional guaranty.' " Davis v. United States , 564 U.S. 229, 236, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), quoting Elkins v. United States , 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). The purpose of the rule is not to redress the constitutional injury but to deter future constitutional violations. Id. at 236-237, 80 S.Ct. 1437 ; State v. Johnson , 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.3d 1061, ¶ 40. When suppression would not yield "appreciable deterrence," application of the exclusionary rule is unwarranted.
*375 United States v. Janis , 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). The state argues that the exclusionary rule should not be applied in this case for two reasons: one, the contraband would inevitably have been discovered and two, the trooper acted in good faith.
The state's inevitable-discovery argument
{¶ 26} The state asserts that the contraband in the appellant's purse would inevitably have been discovered in the subsequent search of Hall's vehicle and/or at the Montgomery County jail when the appellant was booked. We disagree.
{¶ 27} This court adopted the inevitable-discovery exception to the exclusionary rule in State v. Perkins , 18 Ohio St.3d 193, 480 N.E.2d 763 (1985). Under that exception, illegally obtained evidence may be admitted in a proceeding once the state establishes that the evidence would inevitably have been discovered in the course of a lawful investigation. Id. at paragraph one of the syllabus, following Nix v. Williams , 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). If the state can establish by a preponderance of the evidence that it would inevitably have discovered the information by lawful means, "then the deterrence rationale [for the exclusionary rule] has so little basis that the evidence should be received. Anything less *271 would reject logic, experience, and common sense." (Footnote omitted.) Nix at 444, 104 S.Ct. 2501. The prosecution has the burden of demonstrating a reasonable probability that the evidence would have been discovered apart from the unlawful conduct. Perkins at 196, 480 N.E.2d 763.
{¶ 28} The state argues that the local police officer's observation of a capsule on the vehicle's floorboard provided probable cause to believe that the vehicle contained contraband and, thus, to conduct a warrantless search of the vehicle under the automobile exception to the warrant requirement. See Carroll v. United States , 267 U.S. 132, 155-156, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (warrantless search of an automobile is not unreasonable under the Fourth Amendment when officers have probable cause to believe the vehicle contains contraband). That search, the state maintains, would inevitably have uncovered the contraband in the appellant's purse. The record in this case suggests otherwise.
{¶ 29} It was only after the trooper removed appellant's purse from the vehicle, began to search it, and stated that he had found narcotics in it that the local officer approached the trooper and told him that he was "pretty sure" he had observed a capsule on the vehicle's floorboard. While the local officer remained with the trooper outside his vehicle, the trooper relayed to dispatch his discovery of heroin, three capsules, a crack pipe, and yellow pills in the appellant's purse.
{¶ 30} Even assuming that the local officer's observation of the capsule afforded him probable cause to search the vehicle, the inevitable-discovery *376 exception would not apply if the local officer based his decision to search the vehicle on knowledge of the contraband found in the unlawful search of the appellant's purse. See State v. Sharpe , 174 Ohio App.3d 498, 2008-Ohio-267, 882 N.E.2d 960 (2d Dist.) (inevitable-discovery doctrine not applicable when search warrant that justified search was based on facts discovered when officers previously entered and searched home without a warrant); State v. Porter , 178 Ohio App.3d 304, 2008-Ohio-4627, 897 N.E.2d 1149, ¶ 44 (2d Dist.) (recognizing the danger of allowing law-enforcement officers "to exploit their own illegal conduct in order to engage in an 'alternative line of investigation' "). In the context of the related independent-source exception to the exclusionary rule, the United States Supreme Court has held that a search pursuant to a warrant is not an independent source of evidence, so as to avoid application of the exclusionary rule, if the decision to seek the warrant was prompted by an officer's observations during a prior, unlawful entry or if information from the unlawful entry affected the magistrate's decision to issue the warrant. Murray v. United States , 487 U.S. 533, 542, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).
{¶ 31} There is no evidence that the local officer would have conducted a search based on his observation of the capsule absent awareness that the trooper had found drugs and drug-related contraband in his unlawful search of the appellant's purse, in large part because the local officer did not testify at the suppression hearing. The Twelfth District noted that the local officer informed the trooper about his observation of the capsule after the trooper discovered the drugs and drug paraphernalia in appellant's purse. 2016-Ohio-2894, 64 N.E.3d 570, ¶ 7. And the dashboard-camera video establishes that the local officer was aware of the trooper's discovery of drugs and drug paraphernalia in appellant's purse before he began a search of the vehicle. The local officer can be heard on the video suggesting a search of the vehicle several minutes after learning *272 of the contraband in appellant's purse and just before the trooper asks the owner of the vehicle whether there is anything else in the vehicle he needs to know about. The trooper's testimony and the dashboard-camera video-the only evidence the state presented at the suppression hearing-fail to demonstrate by a preponderance of the evidence a reasonable probability that the local officer would inevitably have discovered the contraband in appellant's purse apart from the trooper's removal and search of the purse in violation of appellant's Fourth Amendment rights. On these grounds, we conclude that the state did not meet its burden of proving the applicability of the inevitable-discovery exception to the exclusionary rule.
The state's good-faith argument
{¶ 32} The state also asserts that the exclusionary rule should not apply because the trooper was acting in good faith and in accordance with a written *377 Ohio State Highway Patrol policy and not with the intent of performing an evidentiary search when he retrieved appellant's purse. Again, we disagree.
{¶ 33} When an officer acts with an objectively reasonable, good-faith belief that his or her conduct is lawful, the deterrence rationale for the exclusionary rule loses force. Davis , 564 U.S. at 241, 131 S.Ct. 2419, 180 L.Ed.2d 285, citing United States v. Leon , 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The United States Supreme Court has applied the good-faith exception to searches conducted in objectively reasonable, good-faith reliance on an invalid search warrant issued by a detached and neutral magistrate, Leon at 922-923, 104 S.Ct. 3405, to searches conducted in reasonable reliance on subsequently invalidated statutes, Illinois v. Krull , 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), to searches conducted in reasonable reliance on erroneous information in a warrant database, Arizona v. Evans , 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), Herring v. United States , 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and to searches conducted in reasonable reliance on binding judicial precedent, Davis at 241, 131 S.Ct. 2419.
{¶ 34} This court recently applied the good-faith exception to evidence obtained from the warrantless attachment of a GPS device to a suspect's vehicle when, based on the state of the law at the time, the officer had an objectively reasonable belief that his actions did not violate the suspect's Fourth Amendment rights. Johnson , 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.3d 1061, at ¶ 50. But even more recently, we refused to apply the good-faith exception when an officer's search of a vehicle in which the defendant sat was not objectively reasonable under the Fourth Amendment. State v. Leak , 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 37.
{¶ 35} In Leak , an officer arrested the defendant, who was sitting in the passenger seat of a legally parked vehicle, on an outstanding warrant and secured him in the back of the officer's patrol car. The officer then called a tow truck and, purportedly pursuant to standard police procedure, conducted an inventory search of the vehicle. The record, however, contained no evidence that the defendant owned the vehicle. The lead opinion in Leak reasoned that testimony about a police procedure for conducting inventory searches was not sufficient to establish the reasonableness of the search if impoundment of the vehicle itself was unlawful. Id. at ¶ 29. Ultimately, the lead opinion conclude, "The fact that the arresting officer used established police procedure to conduct the inventory search does not overcome the unlawfulness of the impoundment in the first place. This is precisely *273 the type of governmental intrusion the Fourth Amendment seeks to prohibit." Id. at ¶ 37.
{¶ 36} Here, the trooper testified that it was standard Highway Patrol procedure for a trooper to transport a female arrestee's purse with her to jail, but he *378 also admitted that he could have left appellant's purse with her boyfriend. The trooper stated that there is a written Highway Patrol policy to search a purse that a trooper will take into his or her cruiser. He did not, however, state that the standard procedure to transport a female arrestee's purse with her was reduced to a written policy. That is the extent of the evidence regarding the existence and content of a Highway Patrol policy; the state did not introduce a written policy. Even assuming that there is a written policy to not only search a purse that is to be transported with an arrestee but also to retrieve an arrestee's purse, the existence of such a policy is insufficient to establish the reasonableness of the search under the Fourth Amendment when the retrieval itself is unlawful. See Leak at ¶ 29.
{¶ 37} Courts use an objective standard for judging officers' good faith when applying the good-faith exception to the exclusionary rule. Leon , 468 U.S. at 919, 104 S.Ct. 3405, 82 L.Ed.2d 677, fn. 20. The United States Supreme Court has stated, with respect to the applicable standard:
We emphasize that the standard of reasonableness we adopt is an objective one. Many objections to a good-faith exception assume that the exception will turn on the subjective good faith of individual officers. "Grounding the modification in objective reasonableness, however, retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment." Illinois v. Gates , 462 U.S. [213,] 261, n. 15, 103 S.Ct. [2317, 76 L.Ed.2d 527] (WHITE, J., concurring in judgment); see Dunaway v. New York , 442 U.S. [200,] 221, 99 S.Ct. [2248, 60 L.Ed.2d 824] (STEVENS, J., concurring). The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits. United States v. Peltier , 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975).
(Capitalization sic.) Id.
{¶ 38} We do not question the objective reasonableness of a policy that requires a trooper to transport with an arrestee any personal property, including a purse, that is on the arrestee's person at the time of the arrest. But appellant's purse was not on her person; it was in the vehicle. The trooper testified that he relied on standard Highway Patrol procedure to retrieve the purse from the vehicle. Even so, such a policy is insufficient to justify an objectively unreasonable intrusion into a place protected by the Fourth Amendment.
*379 Conclusion
{¶ 39} Under the Fourth Amendment, a warrantless search is per se unreasonable unless it falls into one of the few well-defined exceptions to the Fourth Amendment's warrant requirement. State v. Kessler , 53 Ohio St.2d 204, 207, 373 N.E.2d 1252 (1978). When a motion to suppress evidence obtained in a warrantless search is filed, the state has the burden of establishing that one of the exceptions applies. Id. We do not question the reasonableness of an administrative policy that requires troopers to search and inventory personal *274 effects that lawfully come into their custody when a person is arrested. However, when a law-enforcement officer relies solely on his or her department's policy to retrieve personal effects from a place that is protected by the Fourth Amendment, those items have not lawfully come into the custody of the officer. Therefore, the search of appellant's purse in this case does not fall within the inventory exception to the Fourth Amendment's warrant requirement. Accordingly, we reverse the court of appeals' judgment, and we vacate appellant's convictions and sentence, which were based solely on the evidence found in her purse.
Judgment reversed and convictions and sentence vacated.
French and Fischer, JJ., concur.
Kennedy, J., concurs in judgment only, with an opinion.
O'Donnell, J., dissents, with an opinion.
DeWne, J., dissents, with an opinion joined by O'Connor, C.J.
Kennedy, J., concurring in judgment only.
{¶ 40} I agree with the lead opinion that the inventory search conducted here was a pretextual investigatory search for contraband and that the state failed to prove that the trooper acted in good faith, which if proved would have barred application of the exclusionary rule. However, because of the breadth of the lead opinion and because the lead opinion, in my view, does not address the narrow questions before us, I concur in judgment only and write separately.
{¶ 41} I agree with the statement in Justice DeWine's dissenting opinion that the Fourth Amendment protects people, not property, against arbitrary invasions by the government. See United States v. Brignoni-Ponce , 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Moreover, "the Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only 'unreasonable searches and seizures.' " Coolidge v. New Hampshire , 403 U.S. 443, 509-510, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (Black, J., concurring in part and dissenting in part). "[W]hether a search and seizure is unreasonable within the *380 meaning of the Fourth Amendment depends upon the facts and circumstances of each case." Cooper v. California , 386 U.S. 58, 59, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
{¶ 42} "With respect to noninvestigative police inventories * * *, the policies underlying the warrant requirement * * * are inapplicable." South Dakota v. Opperman, 428 U.S. 364, 370, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), fn. 5. Inventory searches are not conducted for the purpose of discovering evidence of a crime, and the "officer [performing an inventory search] does not make a discretionary determination to search based on a judgment that certain conditions are present." Id. at 383, 96 S.Ct. 3092, (Powell, J., concurring). In Opperman , the United States Supreme Court upheld an inventory search of a vehicle as a reasonable exception to the Fourth Amendment warrant requirement based on the caretaking function of law enforcement.
{¶ 43} "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Colorado v. Bertine , 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). So long as law-enforcement officers follow a standardized policy and they do not act in bad faith or for the sole purpose of investigation, an inventory search is valid. Id.
{¶ 44} The United States Supreme Court extended the caretaking-inventory-search exception to the search of an arrestee *275 and his possessions incident to incarceration in Illinois v. Lafayette , 462 U.S. 640, 648, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). In Lafayette , the defendant was arrested for disturbing the peace and was brought to the police station for the booking process. After being instructed to empty his pockets, the defendant removed a package of cigarettes from his shoulder bag and placed the bag on the counter. Thereafter, the booking officer removed the remaining contents of the shoulder bag and found ten amphetamine pills. The defendant was charged with possession of a controlled substance. At the suppression hearing, relying on Opperman , the state argued that the search was a valid inventory search. The trial court granted the defendant's motion to suppress, and the court of appeals affirmed. The Illinois Supreme Court declined to review the case.
{¶ 45} In reversing the Illinois appellate court, the United States Supreme Court held that "it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." Lafayette at 648, 103 S.Ct. 2605. The United States Supreme Court "has recognized that the 'governmental interests underlying a station-house search of the arrestee's person and possessions may in some circumstances be even greater than those supporting a search immediately following arrest.' "
*381 Maryland v. King , 569 U.S. 435, 456, 133 S.Ct. 1958, 1974, 186 L.Ed.2d 1 (2013), quoting Lafayette at 645, 103 S.Ct. 2605. When a person is formally processed into police custody, " 'the law is in the act of subjecting the body of the accused to its physical dominion.' " King at 449-450, 133 S.Ct. 1958, 1974, quoting People v. Chiagles , 237 N.Y. 193, 197, 142 N.E. 583 (1923) (Cardozo, J.).
{¶ 46} The difference between an investigative search and an inventory search is that an inventory search serves an administrative or caretaking function, see Opperman , 428 U.S. at 369-371, 96 S.Ct. 3092, 49 L.Ed.2d 1000. And "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." Bertine , 479 U.S. at 374, 107 S.Ct. 738, 93 L.Ed.2d 739.
{¶ 47} The state argues that the evidence would inevitably have been discovered as a result of the officer's alternative line of investigation, i.e., his search of the car based on the capsule in the car. However, I agree with the appellate court's holding that the state failed to prove the "alternative line of investigation" requirement of the inevitable-discovery doctrine, 2016-Ohio-2894, 64 N.E.3d 570, ¶ 20.
{¶ 48} Relying, however, on the uncontroverted testimony of the trooper that the Highway Patrol has a standardized policy regulating an inventory search performed incident to incarceration and its finding that the trooper's search was executed in conformance with the policy, the appellate court held the search valid. Id . at ¶ 28. I disagree.
{¶ 49} This case presents two interrelated questions. The first question is whether it is reasonable, within the context of the Fourth Amendment, for a law-enforcement officer to execute a standardized procedure or policy permitting an inventory search incident to incarceration when the officer has no intention of taking the arrested person to a station house for booking and incarceration. The second question is whether it is reasonable, within the context of the Fourth Amendment, for a law-enforcement procedure or policy to give an officer discretionary authority to take an arrestee's personal effects, which were not in the arrestee's possession at the time of arrest and were safely secured, to the *276 station house in order to subject those personal effects to an inventory search incident to incarceration. I would hold that both are unreasonable under the Fourth Amendment.
{¶ 50} The law-enforcement community-caretaking function is centered on the interest of public safety. Opperman , 428 U.S. at 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000. To be sure, law-enforcement officers frequently engage in "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski , 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The United *382 States Supreme Court has recognized the caretaking function of law enforcement in relation to motor vehicles, see id. , and in rendering emergency aid, see Mincey v. Arizona , 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 ; Michigan v. Fisher , 558 U.S. 45, 47, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009). The three main objectives of inventory searches are "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." Bertine , 479 U.S. at 372, 107 S.Ct. 738, 93 L.Ed.2d 739. However, the Fourth Amendment prohibits the unreasonable exercise of the community-caretaking function, even when "conducted pursuant to a standardized policy," because such protection "is part and parcel of the Fourth Amendment's guarantee against unreasonable searches and seizures." United States v. Sanders , 796 F.3d 1241, 1250 (10th Cir.2015).
{¶ 51} When the trooper initially placed appellant, Jamie Banks-Harvey, in the backseat of his patrol car, her purse remained with her live-in boyfriend in his vehicle. After the trooper got confirmation that there was a warrant out of Montgomery County for appellant's arrest, he removed her from the patrol car, told her that there was a warrant for her arrest, handcuffed her, and immediately returned her to the patrol car.
{¶ 52} However, the trooper did not intend to book appellant in at the station house. When asked at the suppression hearing what he intended to do with appellant after he got confirmation of the warrant, the trooper testified, "I was going to take her into investigative detention custody" until Montgomery County law-enforcement officers arrived to "extradite her." In an attempt to justify his intrusion into appellant's purse on the basis of an inventory search incident to incarceration, the trooper testified that he had wanted to prevent appellant from illegally conveying illegal substances into the jail and he had wanted to keep the Montgomery County Sheriff's Office from having to "deal with it" and to avoid "chain of custody" problems. It was only after the trooper conducted what the appellate court described as an inventory search incident to incarceration and discovered the evidence at issue in this case that he intended to book her in on local charges.
{¶ 53} Additionally, in response to the state's questioning, the trooper indicated that it is standard procedure when a female is taken into custody for the trooper to retrieve and take her purse. However, that standard procedure was plainly not hard and fast, because he subsequently admitted that he could have left appellant's purse with her live-in boyfriend in his vehicle.
{¶ 54} While the "reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means," Lafayette , 462 U.S. at 647, 103 S.Ct. 2605, 77 L.Ed.2d 65, a valid seizure must be supported by probable cause or be consis tent with the community- *277 *383 caretaking role of law enforcement , see Opperman , 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000. Because the trooper was not going to book appellant in at a station house and because appellant's purse was safe with her live-in boyfriend in his vehicle and the Highway Patrol's policy permitted the trooper to leave the purse with the boyfriend, the community-caretaking function was not triggered.
{¶ 55} To be sure, if the arrest of appellant would have caused her purse to be abandoned in a public or semipublic area or the matter of ownership of the purse was in doubt or the identity of appellant was in dispute, the trooper would have had a duty to retrieve and safeguard the purse. See United States v. Perea , 986 F.2d 633 (2d Cir.1993) (a duffel bag that a defendant was transporting while riding in a taxi was subject to impoundment and an inventory search upon the defendant's arrest); see also State v. Scroggins , 297 Minn. 144, 148, 210 N.W.2d 55 (1973) (search of arrestee's pockets proper to ensure accurate preincarceration identification). But our determination whether a search and seizure was reasonable turns on the specific facts and circumstances of the particular case. See Cooper , 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730.
{¶ 56} Even when a standardized procedure or policy permits an inventory search of an arrested person's effects incident to incarceration, it is unreasonable, within the context of the Fourth Amendment, for a law-enforcement officer to execute that inventory search when he is not taking the arrested person to a station house for booking and incarceration. Moreover, it is unreasonable, within the context of the Fourth Amendment, for a law-enforcement procedure or policy to give an officer discretionary authority to take personal effects that are not in an arrestee's possession at the time of arrest and are safely secured to the station house, where they will be subject to an inventory search. Therefore, based on the facts of this case, I would find the inventory search incident to incarceration at issue here unreasonable.
{¶ 57} As the lead opinion points out, even when an inventory search incident to incarceration is unreasonable, absent a showing that the law-enforcement officer acted in bad faith or for the sole purpose of investigation, and so long as the officer followed a standardized caretaking policy or procedure, evidence obtained in the inventory search will not be suppressed.
{¶ 58} The trooper here testified that he searched appellant's purse to safeguard her possessions, to look for weapons for officer-safety considerations, and to look for evidence of a crime. Categorically, therefore, the trooper's search of appellant's purse to ferret out evidence of a crime was per se invalid. Bertine , 479 U.S. at 372, 107 S.Ct. 738, 93 L.Ed. 2d 739. In evaluating the trooper's other stated motives, we look to what the United States Supreme Court has said on the subject of evaluating an officer's good faith:
*384 "[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." [United States v .] Leon , 468 U.S. [897], at 922, n. 23, 104 S.Ct. 3405 [82 L.Ed.2d 677 (1984) ]. These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience, *278 Ornelas v. United States , 517 U.S. 690, 699-700, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), but not his subjective intent, Whren v. United States , 517 U.S. 806, 812-813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).
Herring v. United States , 555 U.S. 135, 145-146, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). Applying this standard to this case, the trooper did not act in good faith when he searched and seized the defendant's purse for purposes of safeguarding her possessions or to ensure officer safety.
{¶ 59} With regard to safeguarding appellant's possessions, the trooper had no intention of booking her in on the active warrant and the purse was in a safe location when he retrieved it. The trooper testified that he had taken her purse from the car because she had no relation to the vehicle and the purse might contain a "cell phone, jewelry, something in there that could get stolen." However, if safeguarding her possessions was the trooper's true motive, then he would have asked appellant or her live-in boyfriend whether any other property in the vehicle belonged to her, and he did not do that.
{¶ 60} Lastly, officer safety is of paramount importance, and all law-enforcement officers should employ their training and experience to first ensure their own safety as they protect and serve the citizens of their communities. However, in this case, appellant was handcuffed and contained in the back seat of the patrol car when the trooper retrieved her purse. Officers may conduct a constitutionally sound search of a vehicle "incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." Arizona v. Gant , 556 U.S. 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Therefore, officer safety was not a legitimate reason for the inventory search here.
{¶ 61} An inventory search executed in bad faith or for the sole purpose of investigation is not a valid inventory search, see Bertine , 479 U.S. at 372, 107 S.Ct. 738, 93 L.Ed.2d 739, and a pretextual search for evidence "is not an inventory search," State v. Robinson , 58 Ohio St.2d 478, 480, 391 N.E.2d 317 (1979). By his own admission, the trooper retrieved appellant's purse from her live-in boyfriend's vehicle to look for evidence of a crime. Having no valid *385 exceptions to the Fourth Amendment warrant requirement, the trooper relied on an inventory search incident to incarceration as a pretext to search appellant's purse for evidence of a crime.
{¶ 62} A trooper's subjective belief that the Highway Patrol policy permits an inventory search incident to incarceration is not objectively justified when the trooper has no intention of taking appellant to a station house for booking and incarceration. Moreover, a trooper's subjective belief that the Highway Patrol policy gave him discretionary authority to ensure that the purse of a female arrestee went with her to the station house is not objectively justified when the purse was in a secure location. A reasonably well-trained officer would know that the United States Supreme Court decision in Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65, does not support the inventory search as it was conducted here.
{¶ 63} As guardians of the Constitution, the judiciary must protect the people's right to live free from unconstitutional government intrusions by carefully applying the Supreme Court's "jealously and carefully drawn exceptions to the warrant requirement," United States v. Jones , 635 F.2d 1357, 1360 (8th Cir.1980), and by carefully reviewing administrative searches to ensure that they were executed *279 in good faith and in line with the community-caretaking function, Bertine at 372, 107 S.Ct. 738. "There is always a temptation in criminal cases to let the end justify the means, but as guardians of the Constitution, we must resist that temptation." State v. Gardner , 135 Ohio St.3d 99, 2012-Ohio-5683, 984 N.E.2d 1025, ¶ 24, citing United States v. Mesa , 62 F.3d 159, 163 (6th Cir.1995).
{¶ 64} The exclusionary rule exists to deter police misconduct. Davis v. United States , 564 U.S. 229, 236-237, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011). Regarding the rule, the United States Supreme Court has stated: "[T]he significant costs of this rule have led us to deem it 'applicable only * * * where its deterrence benefits outweigh its substantial social costs.' * * * 'Suppression of evidence * * * has always been our last resort, not our first impulse.' " Utah v. Strieff , --- U.S. ----, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016), quoting Hudson v. Michigan , 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006).
{¶ 65} Here, because the search of appellant's purse was not executed pursuant to a standardized procedure or policy in good faith and was executed for the sole purpose of investigation, I am compelled to apply the exclusionary rule. For all the foregoing reasons, I concur in judgment only.
O'Donnell, J., dissenting.
{¶ 66} Respectfully, I dissent.
*386 {¶ 67} I would dismiss this case as having been improvidently allowed because the Ohio State Highway Patrol policy is not in evidence, the case is factually specific, and no general rule of law can be formulated from its resolution.