[Cite as *State v. Cottrell*, 2019-Ohio-889.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28089 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-1107 |
| | : | |
| NATHAN M. COTTRELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of March, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

MICHAEL HALLOCK, JR., Atty. Reg. No. 0084630, P.O. Box 292017, Dayton, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} The State of Ohio appeals the trial court's conclusion that statements made by Nathan Cottrell to a detective and the physical evidence resulting from the statements should be suppressed. The court concluded that the statements were made involuntarily because they were coerced by false promises and that the physical evidence was obtained after custodial interrogation without *Miranda* warnings. We conclude that the evidence in the record does not support finding that a promise was made and that the facts do not support the conclusion that Cottrell's will was overborne and that his capacity for self-determination was critically impaired. We also conclude that *Miranda* warnings were not necessary because Cottrell was not in custody. Consequently we reverse the trial court's suppression order, and we remand this matter for further proceedings.

## I. Facts and Proceedings

{¶ 2} A homeowner discovered in March 2018 that his home had been broken into and several items taken. The burglar had dropped a broken rosary that someone recognized as belonging to Cottrell, who is the brother of a former girlfriend of the homeowner. The homeowner told the police that he suspected Cottrell. A detective talked to Cottrell about the burglary, and Cottrell admitted that he was guilty and told the detective that he would try to get the stolen items back. A few days later, Cottrell gave the detective the items that he was able to recover, and the detective arrested him.

{¶ 3} Cottrell was indicted on one count of burglary under R.C. 2011.12(A)(3). He filed a motion to suppress his confession and the recovered stolen items. Cottrell argued that his confession was made involuntarily and that a *Miranda* violation led to the stolen

items. A suppression hearing was held at which the state presented the testimony of the detective and recordings of his conversations with Cottrell. The evidence showed the following facts.

{¶ 4} On March 17, 2018,[1] Detective Vincent Mason of the City of Kettering Police Department was working in uniform as a street-patrol officer. He was dispatched to investigate a burglary complaint made by Tyler Bond. Bond told Detective Mason that someone had broken into his home and taken various items. Bond told Mason that he suspected Cottrell, because a rosary that looked like Cottrell's was found in the basement. Bond explained that Cottrell is the brother of his ex-girlfriend. Detective Mason used his cell phone to take a picture of the rosary. Detective Mason then left to find Cottrell.

{¶ 5} He stopped first at the home of Cottrell's mother, but Cottrell was not there. His mother told Mason that he might be at his grandmother's house, so Detective Mason went to the grandmother's house. She let Mason in, and he and Cottrell talked in the living room. Detective Mason told Cottrell that he wanted to talk to him about a recent burglary. Mason showed him the picture of the rosary on his cell phone. Cottrell appeared to recognize the rosary, saying he had one like it. Mason told Cottrell that his sister had said it was his and asked Cottrell how it ended up in the basement of Bond's house. Detective Mason told Cottrell that he knew he had a drug problem and asked him if he could get the stolen items back. Cottrell asked if Mason could give him until the next day, Sunday.

---

[1] The trial court found that these events occurred on March 18. Detective Mason testified that he was dispatched and then spoke to Cottrell on March 18, but the cruiser-cam recording of the dispatch and the conversation indicates that these events occurred on March 17. That March 17 is the correct date is also supported by other evidence about the chronology of events. However the date of the events is not critical to our determination.

Detective Mason told him that he could have until Monday, March 19. As Mason was leaving, he indicated that he wanted to get this matter cleared up. Mason told Cottrell that he (Mason) would recommend that Cottrell get help for his drug problem.

{¶ 6} On Monday morning, Cottrell called Detective Mason on the telephone. Mason asked him whether he had gotten back the stolen items. Cottrell told Mason that he was afraid to go out, that he was afraid he would be arrested and was afraid that Bond would attack him. Detective Mason told Cottrell that there was no intent to arrest him right then and that he had told Bond to leave Cottrell alone. Cottrell then told Mason that he would get the stuff and call him when he had it. Detective Mason told him that he had until noon.

{¶ 7} Later that day, the prosecutor approved a burglary charge against Cottrell and an arrest warrant was issued. Detective Mason picked up the warrant and drove to Cottrell's grandmother's house accompanied by two uniformed Kettering police officers. Mason and the two officers met Cottrell on the front porch. Cottrell told Mason that he was able to recover the items, and Cottrell went back into the house. He reappeared a short time later with a bag. When Detective Mason looked in the bag, he noticed that not all the stolen items were there. Mason then told Cottrell that he had a warrant for his arrest and arrested him.

{¶ 8} After hearing the evidence, the trial court sustained Cottrell's motion to suppress. The trial court concluded that the incriminating statements that Cottrell made to Detective Mason on March 17 and on March 19 during the telephone conversation should be suppressed because they were made involuntarily. The court determined that Cottrell was improperly coerced into making the statements by Mason's false promises

that he would not be arrested and that he would receive drug treatment if he cooperated. The trial court concluded that Cottrell's incriminating statements made later on March 19 and the recovered stolen items should be suppressed because Cottrell was not given *Miranda* warning. The court found that Cottrell was in custody when he spoke with Detective Mason on the porch, because Mason had an arrest warrant and intended to arrest Cottrell after they spoke.

**{¶ 9}** The state appeals.

## II. Analysis

**{¶ 10}** The state assigns two errors to the trial court's suppression decision:

I. The trial court's factual finding and legal conclusion—that Cottrell's March 17 and March 19, 2018 statements to the detective were coerced by false promises—is refuted by the record. The trial court's decision to suppress those statements must be reversed.

II. The detective's subjective intent to arrest Cottrell, which was never communicated, did not render Cottrell in custody for *Miranda* purposes.

**{¶ 11}** "Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. But the appellate court must decide the legal questions independently, without deference to the trial court's decision." (Citations omitted.) *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14.

## A. Voluntariness

**{¶ 12}** The trial court determined that Cottrell's incriminating statements to

Detective Mason on March 17 and 19 were involuntary because Cottrell was coerced by Mason's promises not to arrest him and to get him treatment for his drug addiction. The state argues in the first assignment of error that there was no coercion.

{¶ 13} "Whether a statement is voluntary is a question of law." *State v. Young*, 2d Dist. Montgomery No. 20408, 2004-Ohio-3916, ¶ 33, citing *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). "Issues of voluntariness have always turned on the presence or absence of police coercion or overreaching." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 34, citing *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Indeed, "[c]oercive police activity is a necessary predicate to finding that a confession is not voluntary." *State v. McKinley*, 2d Dist. Montgomery No. 21668, 2007-Ohio-3705, ¶ 19, citing *Connelly* at 167. The test is whether police conduct overbore the defendant's will to resist and brought about a confession not freely self-determined. *See Young* at ¶ 44. In making this determination, a court " 'should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' " *State v. Mason*, 82 Ohio St.3d 144, 154, 694 N.E.2d 932 (1998), quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus.

*March 17 statements*

{¶ 14} We begin with Cottrell's implicit confession to Detective Mason on March 17. There is an audio recording of the interview in the record, which we have carefully reviewed, but it was not transcribed. We therefore paraphrase what we have heard from

the exhibits:

Mason: I need to talk to you about something that happened in the last 24 hours.

[Mason shows Cottrell the photograph of the broken rosary on his cell phone.]

Mason: They tell me that this is yours.

Cottrell: I do have one like that.

Mason: It was left in a house that was broken into.

Mason: I understand it might be a drug issue. I understand that you have to do what you have to do. No one got hurt, but the people want their stuff back.

Mason: I decided to come here to try to get their stuff back and get this cleared up.

Mason: How did the rosary, which your sister said is yours, wind up in the basement of this house?

Mason: Do you know what I'm talking about?

Cottrell: Yeah.

Mason: Is there a chance I can get that stuff back?

Cottrell: Can you give me 24 hours, come back tomorrow?

Mason: I can come back Monday. I don't work tomorrow. That's the only reason I'm not coming tomorrow.

Mason: I need to get that stuff back. Because you see, there's video cameras. I haven't seen the video yet. So technically, I'm not charging you

with anything at this time. I want to get the stuff back, talk to them about what they want. If I get all the stuff back, maybe they don't want nothing.

Mason: I know you have a drug problem. It's a problem, making you do this stuff. I talked to your mom. When I showed her that picture, she thought you were dead. I don't want that, she don't want that, the guy whose house it was don't want that. He just wants his stuff back.

Mason: So it's not here, is what you're saying?

Cottrell: Right.

Mason: Let me ask you this question, and either way I'm leaving here by myself. Was anyone else with you when that stuff was collected from the house?

Cottrell: No.

Mason: If I don't hear from you by Monday. . . I'm going to get the video Monday. The video's going to put you there. He's got cameras on all four corners of his house. It's going to show you going in and going out with the stuff. He wants you arrested. I don't want to deal with that.

Mason: This is your golden opportunity. I give everybody one good shot.

* * *

Mason: Don't do anything stupid before Monday. We'll get this cleared up. Maybe get some help with this issue.

Mason: I cannot guarantee you will not be arrested. I'm going to talk to a prosecutor, but they don't work on the weekends so I'm not talking to

him right now.

Mason (just before he leaves): Let's get this cleared up I know you have a problem. I will recommend that you get help, because that's what everybody's asking.

**{¶ 15}** The question is whether Cottrell's incriminating statements were not freely self-determined because Mason's conduct overcame Cottrell's will to resist. The trial court did not place much weight on Cottrell's age, mentality, or prior criminal experience. Mason's questioning lasted less than ten minutes, was pretty low-key, and contained no threats. But the trial court found that Detective Mason made two false promises—that if Cottrell cooperated he would not be arrested, and that he would receive drug treatment.

**{¶ 16}** We do not believe that the evidence supports a finding that Detective Mason made either promise. Mason's statements simply did not rise to the level of a promise. And even if they had, he promised at most that he would not arrest Cottrell that day—a promise that he kept. Indeed, Mason expressly said that he could not promise that Cottrell would not be arrested later. As for drug treatment, Mason at most promised only that he would recommend that Cottrell get treatment. Moreover, this promise, even if one determined it could overcome Cottrell's will to resist, came just as Mason was leaving, so it could not have played a role in Cottrell's earlier decision to confess to knowledge of the burglary and the items Cottrell would attempt to recover.

*March 19 statements*

**{¶ 17}** Cottrell's incriminating statements to Detective Mason on the morning of March 19 came during a telephone conversation. The question again is whether Detective Mason's statements overcame Cottrell's will to resist. Cottrell called Detective Mason and

the two talked briefly. An audio recording of the call is in the record but, again, no transcript. Here is our paraphrase of the conversation:

Mason: Did you get the stuff back?

Cottrell: I'm afraid to go out. I'm afraid that I'll be arrested, and I'm afraid that Tyler Bond will attack me.

Mason: Right now, there is no intention to arrest you. And I told Tyler to leave you alone.

Cottrell: Okay. I'll get the stuff and will call you when I have it.

Mason: You need to recover the property by noon today.

{¶ 18} The trial court found that Detective Mason again made an unduly coercive promise to Cottrell that if he cooperated, he would not be arrested. We do not believe that this exchange supports finding such a promise. Again, Detective Mason promises Cottrell, at most, that there was no intent to arrest him at that time. It was not until later that Mason learned that the prosecutor had decided to charge Cottrell and had issued a warrant for his arrest. The evidence did not support a finding that during the telephone conversation, Mason implied, let alone promised, that if Cottrell recovered the stolen items, he would never be arrested.

*No coercive conduct*

{¶ 19} Even if it could be found that on March 17 or 19 Detective Mason made promises to Cottrell, we do not believe that they were so coercive as to render Cottrell's statements involuntary. We have said that whether police conduct is unduly coercive depends " 'upon the nature of the benefit to be derived by a defendant if he speaks the truth, as represented by the police.' " *Young,* 2d Dist. Montgomery No. 20408, 2004-Ohio-

3916, at ¶ 37, quoting *People v. Flores*, 144 Cal.App.3d 459, 469, 192 Cal.Rptr. 772 (1983). If " 'the defendant is given to understand that he might reasonably expect benefits in the nature of more lenient treatment at the hands of the police, prosecution or court in consideration of making a statement, even a truthful one, such motivation is deemed to render the statement involuntary and inadmissible.' " *Id.* at ¶ 39, quoting *Flores* at 469 and *People v. Hill,* 66 Cal.2d 536, 549, 58 Cal.Rptr. 340, 426 P.2d 908 (1967). Here, there is nothing like that.

{¶ 20} We have held that a promise not to arrest a defendant immediately, similar to the one that Detective Mason might have made here, did not overbear the defendant's will and critically impair his capacity for self-determination. In *Young*, a detective made the promise to the defendant during an interview at the police department:

"Meade [the detective] then asked Young [the defendant]: 'Why did you do it?' Young responded with a question: 'What's going to happen to me? Are you going to arrest me, take me to jail?' Meade replied: 'I can arrest you. If you're going to be cooperative, I will not arrest you tonight. I will let you go.' Meade testified that he explained to Young 'what was going to happen, explained basically the judicial process. I told him that I would present the case to the prosecutor's office.' 'And I even told him then, I said, there is even a possibility the prosecutor's office may not accept these charges but I told him that there was probably a strong likelihood that they would. I told him that I could not guarantee the outcome of this case. I could not make him any promises whatsoever.' Meade elaborated: 'I told him that I would present the case to the prosecutor's office and that there was a possibility

that he could receive—that he would receive a summons and that he would never be incarcerated but I told him, I told him over and over, I said, but that doesn't guarantee you. I said, I'm not permitted to make any promises or guarantees and he stated he understood.' "

*Id.* at ¶ 13 (quoting the trial court's suppression decision, which quotes the suppression hearing transcript). The trial court suppressed the defendant's admission as involuntary, finding that he made the admission only because the detective had promised not to arrest him. The court concluded that the promise was coercive police conduct that overbore the defendant's will and critically impaired his capacity for self-determination.

{¶ 21} We disagreed. We said that the detective had promised the defendant only that he would not arrest him immediately if he cooperated, a promise that he kept. Based on all that the detective told the defendant, we said, the defendant "could not have reasonably understood that he was promised more than a mere postponement of his arrest." *Id.* at ¶ 43. "It may well be," we continued, "that Young decided to cooperate because Det. Meade promised not to arrest him immediately. But the test of voluntariness is not a 'but for' test. See *Fulminante*, [499 U.S. at 285-287, 111 S.Ct. 1246, 113 L.Ed.2d 302]. Rather, as the trial court observed, the test is whether coercive police conduct overbore Young's will and critically impaired Young's capacity for self-determination." *Id.* at ¶ 44. We held that there was no factual basis for concluding that the detective's promise not to arrest the defendant immediately overbore the defendant's will and critically impaired his capacity for self-determination; instead, the facts showed that the defendant knew that he was likely going to be charged with or without his cooperation and that "he made a rational, voluntary decision to postpone the probably inevitable arrest by

cooperating." *Id.* at ¶ 45.

{¶ 22} The same is true here. Cottrell was aware that his rosary had been found in the basement of the home, that someone had identified the rosary as belonging to him, and that the homeowner had cameras around his property that in all likelihood captured his crimes on tape. Already during his first conversation with Detective Mason, on March 17, Cottrell implicitly admitted his guilt when he asked Detective Mason if he could have 24 hours to try to get back the stolen property. The evidence did not show that Cottrell made this confession because Mason had overborne his will and critically impaired his capacity for self-determination. Most importantly, any contention that Cottrell's will was overborne by Cottrell's belief that a promise not to arrest him, ever, had been made was belied by Cottrell's own statement in the Monday phone call: "I'm afraid to go out. I'm afraid that I'll be arrested." In other words, he did not himself believe a promise not to arrest him had been made.

{¶ 23} The first assignment of error is sustained.

## B. *Miranda*

{¶ 24} *Miranda* warnings are required only when a suspect is subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. In determining whether an individual was in custody, "the ultimate inquiry is simply whether there [was] a 'formal arrest or a restraint on movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492,

495, 50 L.Ed.2d 714, 97 S.Ct. 711 (1977).

{¶ 25} The custody test is objective. "[T]he initial determination of custody depends upon the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Accordingly, a police officer's "unarticulated plan [to arrest a suspect] has no bearing on the question whether a suspect was 'in custody' at a particular time." *Berkemer v. McCarty*, 468 U.S. 420, 442, 82 L.Ed.2d 317, 104 S.Ct. 3138 (1984). The only relevant inquiry is how a reasonable person in the suspect's position would have understood the situation. *Id.*

{¶ 26} The trial court here determined that, when Detective Mason showed up on March 19, Cottrell should have been given *Miranda* warnings immediately. Detective Mason had an arrest warrant and had two other police officers with him. Because Mason arrived with the intent to arrest Cottrell, the trial court concluded that Cottrell was in custody. The court found that Cottrell "was going to be deprived of his liberty in a significant way."

{¶ 27} But the fact that Detective Mason had an arrest warrant and intended to arrest Cottrell was irrelevant. The initial encounter occurred on the front porch, outside Cottrell's grandmother's house. Cottrell's freedom of movement was not constrained in any way, and he was allowed to go into the house to retrieve the stolen items. At the time that Cottrell spoke with Detective Mason, he was not under arrest, and Mason had not told him that he would be arrested. While the presence of two additional police officers was a factor, it was not sufficient by itself to conclude that Cottrell was in custody for *Miranda* purposes. In these circumstances, we do not think that a reasonable person in

Cottrell's position would have thought that his freedom was restrained to the degree associated with a formal arrest.

{¶ 28} The second assignment of error is sustained.

### III. Conclusion

{¶ 29} The trial court erred by suppressing Cottrell's statements and the physical evidence. Accordingly the court's decision is reversed, and this matter is remanded for further proceedings.

. . . . . . . . . . . .

FROELICH, J., concurs.

DONOVAN, J., dissents:

{¶ 30} I would affirm the decision of the trial court. The majority notes at paragraph 20, "We have held that a promise not to arrest a defendant immediately, similar to the one that Detective Mason MIGHT  have made here, did not overbear the defendant's will and critically impair his capacity for self-determination." (Emphasis added.) However, Detective Mason did indeed promise no arrest would be made. He did so at least two times by his own admission:

> "I told him, I'm not arresting you today. I have no intent of that. I just want to find the stuff and get it back to the owner." Tr. pg. 16, lines 13-15.

> "I believe Nathan called me on the 19th on the phone and said he was worried about going out, that he would be arrested. And I said I told you, I'm not arresting you." Tr. pg. 21, lines 3-5.

{¶ 31} Obviously, the second promise not to arrest was not qualified with the word

"immediately." In fact this latter unqualified promise was made after the initial promise. In my view, the *Young* case is distinguishable.

**{¶ 32}** Cottrell, unlike Young, cannot be said to have known that he was likely to be charged with or without cooperation. In *Young,* as noted by the majority, the judicial process was explained to the defendant along with the prosecutor's discretion to file charges. No such information was provided here. Furthermore, in my view, the fact that Cottrell was afraid to venture outside only serves to support the trial court's conclusion that his will was overborne as an arrest was what he feared most and is exactly what Detective Mason promised would not occur.

**{¶ 33}** I would affirm the decision of the trial court in all respects.

Copies sent to:

Mathias H. Heck
Andrew T. French
Michael Hallock, Jr.
Hon. Timothy N. O'Connell