[Cite as *Westlake v. Roberts*, 2022-Ohio-3675.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF WESTLAKE, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 111339 |
| v. | : | |
| JACKIE L. ROBERTS, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 13, 2022

Criminal Appeal from Rocky River Municipal Court
Case No. 20-TRC-04635

### *Appearances:*

Michael P. Maloney, City of Westlake Director of Law, and John J. Spellacy, Assistant Prosecuting Attorney, *for appellee.*

Law Office of John T. Forristal and John T. Forristal, *for appellant*.

SEAN C. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant Jackie L. Roberts appeals from the trial court's denial of his motion to suppress evidence obtained from a warrantless home entry. Upon review, we find a Fourth Amendment violation occurred. Under the particular

facts of this case, the city did not demonstrate an exigency that created a compelling law enforcement need for officers to make a warrantless home entry while in pursuit of a misdemeanant suspect. Therefore, we reverse the trial court's decision and remand the case with instructions for the trial court to vacate Roberts's conviction, enter an order suppressing any evidence obtained as a result of the warrantless entry, and conduct further proceedings in the matter.

## I.      Facts and Procedural History

{¶ 2}    On December 21, 2020, a complaint was filed in Rocky River M.C. No. 20-TRC-04635 that charged Roberts with first-degree misdemeanor offenses of operating a vehicle while intoxicated ("OVI") in violation of R.C. 4511.19(A)(1)(a) and OVI-refusal to submit to testing in violation of R.C. 4511.19(A)(2)(b).[1] Roberts filed a motion for leave to file a motion to suppress and a motion to suppress. Leave was granted, but before the suppression hearing was held, Roberts entered a plea of no contest to the OVI charge pursuant to a plea agreement. The trial court found him guilty of OVI, and the remaining charge was nolled.

{¶ 3}    At the time Roberts entered the plea, Ohio case law provided that "when officers, having identified themselves, are in hot pursuit of a suspect who flees to a house in order to avoid arrest, the police may enter without a warrant, regardless of whether the offense for which the suspect is being arrested is a misdemeanor." *Middletown v. Flinchum*, 95 Ohio St.3d 43, 45, 765 N.E.2d 330 (2002). But a few

---

[1] Roberts was also charged separately with obstructing official business in Rocky River M.C. No. 20-CRB-1926. That case is not before us.

days after Roberts had entered his plea, the United States Supreme Court decided *Lange v. California*, 594 U.S.\_\_, 141 S.Ct. 2011, 2016, 210 L.Ed.2d 486 (2021), which held otherwise. In *Lange*, the United States Supreme Court ruled that the flight of a misdemeanant suspect does not categorically justify a warrantless home entry and that a case-by-case assessment of the exigencies arising from the misdemeanant's flight must be considered. *Id.* at 2021-2022.

{¶ 4} After the *Lange* decision was issued, Roberts filed a presentence motion to withdraw his no-contest plea and asked the trial court to reset the matter for a suppression hearing because of the holding in *Lange*. The city opposed the motion and argued the warrantless entry that took place was constitutional under *Lange*. A court magistrate denied Roberts's motion, but the trial court sustained Roberts's objections to the magistrate's ruling because "the record does not currently contain a full factual basis for the police officer's warrantless entry into defendant's home." The trial court recognized the holding in *Lange* and scheduled the case for a suppression hearing to provide the city with an opportunity to establish facts that would justify the warrantless home entry that occurred in this case. This court recognizes that *Lange* was newly decided and that the trial court made a concerted effort to apply its holding, without the benefit of a decision from this court applying *Lange*.

{¶ 5} At the suppression hearing held on November 18, 2020, the trial court indicated the record should reflect the trial court held a suppression hearing to provide the city with an opportunity to establish facts that would justify the

warrantless home entry that occurred in this case. The trial court indicated the record should reflect that "there is no issue [at the suppression hearing] that will be addressed on whether or not the traffic stop was proper. There's no objection to the traffic stop." The trial court also indicated the record should reflect "there is no objection to probable cause to arrest after the failed sobriety testing."

{¶ 6} Patrolman Thomas Patrick Cummings of the City of Westlake Police Department testified at the suppression hearing. On December 18, 2020, at approximately 8:45 p.m., police dispatch broadcasted a motorist report of a "possible intoxicated driver."[2] The dispatch information included a description of the vehicle, the license plate number, and the listed address on Dover Center Road associated with the registered owner of the vehicle. Patrolman Cummings proceeded to the area of Dover Center Road and Detroit Road. After observing the suspect's vehicle stop for a red light and turn north on Dover Center Road, Patrolman Cummings got behind the vehicle and activated his overhead lights. The suspect then pulled in the driveway of the residence associated with the vehicle and pulled up by the house. Patrolman Cummings testified that from the point of activating the marked police cruiser's overhead lights to the point of the suspect pulling into the driveway was approximately the distance of one residence, which was only about 60 or 70 feet. Patrolman Cummings expressed with regard to

---

[2] It appears the motorist report was made from an identified tipster. Patrolman Cummings testified that if he "remember[ed] correctly, the words were that the driver was all over the road." However, he conceded that is not what he wrote in his report.

initiating the stop, he "would [not] say that [the suspect] had fled from us in his vehicle. He was just delayed in his stopping." Patrolman Cummings did not observe any firsthand signs of impairment.

{¶ 7} Patrolman Cummings followed the suspect's vehicle into the driveway. He testified that once the suspect exited his vehicle, he fled into the home. Patrolman Cummings confirmed that although he originally responded to investigate a report of a possible intoxicated driver, he did not believe he had probable cause to make an arrest for operating a vehicle under the influence ("OVI") at the point the suspect exited the vehicle.[3] However, he testified that regardless of whether the suspect was impaired, he fled from the lawful order of a police officer.

{¶ 8} Patrolman Cummings testified as follows:

> When the vehicle stopped, came to a stop, the male operator of the vehicle opened the driver's side door, jumped out of the vehicle, looked back at me, and then ran towards the residence. * * * I did get out of my vehicle and chase after the male on foot.
>
> * * *
>
> I told the male to stop several times.
>
> * * *
>
> He did not [stop].

---

[3] "Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer who lacks probable cause to arrest may, consistent with the Fourth Amendment, make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity." *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 19, citing *Navarette v. California*, 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014).

{¶ 9} Patrolman Cummings testified that the suspect, whom he identified at the hearing as Roberts, after momentarily fumbling at the door, gained entry to the house. Patrolman Cummings proceeded to testify as follows:

> The male did gain entry into the house. At which point, the door that enters into the house closed behind him. [Patrolman Cummings and Patrolman Carmen, who was with him,] were close enough that we opened the door in pursuit of the male. There was a gentleman standing in the hallway area right there at the door. At which point, he was not the male that I had observed flee from the vehicle, so I stopped to speak briefly with him, asking where the male had gone. Patrolman Carmen went behind me in pursuit of the male into the house, and I followed Patrolman Carmen. At which point, Patrolman Carmen located the male that we had pursued into the house sitting on the couch in the living room area. He was told to stand up. There were several people in the living room area including some small children. The male was secured for our safety and for the safety of the people in the house, and he was escorted out of the residence.

Patrolman Cummings testified that Roberts denied driving the vehicle and stated that he had been drinking at his mother's house and that he had not been driving.

{¶ 10} The dashcam video with audio was played for the court and included the events up until Roberts entered the home. Video from the in-house surveillance camera also was introduced.

{¶ 11} Patrolman Cummings described Roberts as "hurriedly moving" into the house upon exiting the vehicle. He testified that the individual who opened the door for Roberts appeared to be an occupant of the home and that the individual had a hand on the door handle. Roberts gained entry immediately before Patrolman Cummings reached him. Patrolman Cummings caught the screen door as it was closing and chased Roberts into the home. Patrolman Cummings did not ask to

enter; he only asked the individual at the door where the person he was chasing went. Roberts was secured within "a couple seconds" of the police entering the home.

{¶ 12} Patrolman Cummings indicated that he did not know whether Roberts was a threat; however, he testified that Roberts did not have anything in his hands and did not make any threatening moves toward the officers. Also, Patrolman Cummings did not feel the need to pull his taser or his own weapon for self-defense. Patrolman Cummings was aware the vehicle was registered to a residence in the approximate area on Dover Center Road, and there was no indication that Roberts did not belong at the house. Patrolman Cummings acknowledged that no one invited the officers into the home, the individual at the door did not ask the officers for any help, and none of the occupants in the home were asking for assistance.

{¶ 13} When asked why a warrant to enter the home was not obtained, Patrolman Cummings responded as follows:

> I felt we had exigent circumstances. We had an unknown male. We had a reported possible intoxicated driver. We had a gentleman fleeing from us into a residence. We were directly behind the male. I believe that we were at the time in hot pursuit of that male into the home.

{¶ 14} Patrolman Cummings conceded on cross-examination that he easily could have stopped and knocked on the door and asked for the person he was chasing to come out. He also stated that he had the ability to contact his supervisor by phone or radio that night to obtain a warrant and that the process takes several

hours.  However, he also conceded it could possibly be a short delay, or a few minutes longer delay, to obtain the warrant.

{¶ 15} It appears from the record that following the warrantless entry, additional evidence was obtained by the police.  According to the investigative report, Patrolman Cummings observed Roberts was slurring his words, had a strong odor of alcohol, admitted he had been drinking a few beers at his mother's house, and denied driving the vehicle.  Reportedly, Roberts also had a hard time seeing the officer's stimulus pen, recited letters from the alphabet in random order, and refused further field sobriety testing.  The police arrested Roberts for misdemeanor OVI.

{¶ 16} Following the suppression hearing, the trial court denied Roberts's motion to suppress.  The trial court concluded as follows:

> [T]he totality of circumstances herein demonstrates an emergency and a need to act before it is possible to get a warrant.  Drunk drivers pose an emergency and a risk to others and that risk would be enhanced if they thought that by failing to comply with a lawful police order they could race away from the police and run into a home to subvert the officer's effort to investigate their crime.

{¶ 17} Following the trial court's ruling, Roberts entered a no-contest plea to the charges.  The trial court found Roberts guilty of the charges and imposed sanctions. Roberts timely filed this appeal.

**II. Law and Analysis**

{¶ 18} Roberts's sole assignment of error challenges the trial court's decision to deny his motion to suppress. He argues that the Fourth Amendment was violated when the police made a warrantless entry into his home in pursuit of a misdemeanant suspect, that the warrantless entry was not justified by any exigent circumstances, and that the police did not have consent to enter his home without a warrant.

{¶ 19} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). "But the appellate court must decide the legal questions independently, without deference to the trial court's decision." *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, ¶ 14, citing *Burnside* at ¶ 8.

{¶ 20} The Fourth Amendment to the United States Constitution protects individuals against "unreasonable searches and seizures" and provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Id.*; *accord* Ohio Constitution, Article I, Section 14.

{¶ 21} "The Fourth Amendment ordinarily requires that police officers get a warrant before entering a home without permission." *Lange*, 594 U.S.___, 141 S.Ct. at 2016, 210 L.Ed.2d 486. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 573 U.S. 373, 382, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), citing *Kentucky v. King*, 563 U.S. 452, 459-460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011). "[T]he police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).

{¶ 22} "When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, 96 N.E.3d 262, at ¶ 18, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974). "The exclusionary rule operates to exclude, or suppress, evidence that is derived from police conduct that violated constitutional protections." *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 21, citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). "The purpose of the rule is not to redress the constitutional injury but to deter future constitutional violations." *Banks-Harvey* at ¶ 25, citing *Davis v. United States*, 564 U.S. 229, 236-237, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).

{¶ 23} "One important exception [to the Fourth Amendment's warrant requirement] is for exigent circumstances[,]" which "enables law enforcement officers to handle 'emergenc[ies]'—situations presenting a 'compelling need for official action and no time to secure a warrant.'" *Lange* at 2017, quoting *Riley* at 402; *Missouri v. McNeely*, 569 U.S. 141, 149, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). Because of the constitutional interest at stake, "the contours of that or any other warrant exception permitting home entry are 'jealously and carefully drawn,' in keeping with the 'centuries-old principle' that the 'home is entitled to special protection.'" *Lange* at 2018-2019, quoting *Georgia v. Randolph*, 547 U.S. 103, 109, 115, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006).

{¶ 24} In *Lange*, the United States Supreme Court rejected establishing a categorical warrant exception when a suspected misdemeanant flees from police into a home. *Id.*, 594 U.S__, 141 S.Ct. 2011, 210 L.Ed.2d 486, at syllabus. The United States Supreme Court had previously found the warrantless entry into a home by police in hot pursuit of a fleeing felon suspected of dealing drugs was justified in *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976),[4] but *Santana* addressed a police pursuit of a felony suspect. *Lange* at 2019, citing *Santana*. The Supreme Court had also found that "application of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned

---

[4] In *Santana,* the Supreme Court reasoned the warrantless intrusion into Santana's house by police in hot pursuit was justified when there was a realistic expectation that any delay would result in destruction of narcotics evidence. *Id*. at 43.

when there is probable cause to believe that only a minor offense" is involved. *Welsh*, 466 U.S. at 753, 104 S.Ct. 2091, 80 L.Ed.2d 732.

{¶ 25} *Welsh* involved a warrantless arrest for operating a motor vehicle while intoxicated, which was a noncriminal traffic offense under the applicable Wisconsin Vehicle Code. *Id*. at 743, 753. A witness had observed a car being driven erratically and eventually swerve off the road. *Id*. at 742. The driver got out of the car and walked away. *Id*. After checking the car's registration, police proceeded to Welsh's nearby home and entered without a warrant. *Id*. at 742-743. The United States Supreme Court rejected the state's attempt to justify the arrest by relying on the hot-pursuit doctrine and recognized that because the petitioner had already arrived home and had abandoned his car at the scene of the accident, there was little remaining threat to the public safety. *Id*. at 753. As to the state's asserted need to ascertain the petitioner's blood-alcohol level, the Supreme Court determined that "a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant." *Id*. at 754. The Supreme Court concluded that Welsh's arrest was invalid and was "clearly prohibited by the special protection afforded the individual in his home by the Fourth Amendment." *Id*.

{¶ 26} In *Lange*, the United States Supreme Court recognized that *Welsh* involved facts under which no pursuit was necessary. *Lange* at 2020. The Supreme Court indicated that although the calculus changes with a suspect's flight, "[i]n

misdemeanor cases, flight does not always supply the exigency that this Court has demanded for a warrantless home entry." *Id.* at 2021.

{¶ 27} Under the facts in *Lange*, Lange was charged with misdemeanor driving under the influence and a noise infraction. *Id.*, 594 U.S.___, 141 S.Ct. 2011, 210 L.Ed.2d 486, at syllabus. Lange drove a short distance to his driveway and entered his attached garage after an officer initiated a traffic stop. *Id.* The officer followed Lange into the garage without a warrant and conducted field sobriety tests after observing signs of intoxication. *Id.*

{¶ 28} The Supreme Court recognized that "an officer may make a warrantless entry when 'the exigencies of the situation' create a compelling law enforcement need.'" *Id.* at 2016, quoting *King*, 563 U.S. at 460, 131 S.Ct. 1849, 179 L.Ed.2d 865. But the Supreme Court rejected application of a categorical rule allowing a warrantless home entry when a misdemeanant flees. *Id.* at 2016, 2024. The Supreme Court considered that its "Fourth Amendment precedents * * * point toward assessing case by case the exigencies arising from misdemeanants' flight." *Id.* at 2021. The Supreme Court held that "[w]hen the totality of circumstances shows an emergency—such as imminent harm to others, a threat to the officer himself, destruction of evidence, or escape from the home—the police may act without waiting" for a warrant. *Id.* at 2021. Although the circumstances include the flight itself, "[w]hen the nature of the crime, the nature of the flight, and surrounding facts present no such exigency, officers must * * * get a warrant." *Id.* at 2021-2022.

{¶ 29} In *Lange*, the Supreme Court concluded as follows:

> The flight of a suspected misdemeanant does not always justify a warrantless entry into a home. An officer must consider all the circumstances in a pursuit case to determine whether there is a law enforcement emergency. On many occasions, the officer will have good reason to enter—to prevent imminent harms of violence, destruction of evidence, or escape from the home. But when the officer has time to get a warrant, he must do so—even though the misdemeanant fled.

*Id*. at 2024.

{¶ 30} We recognize that *Lange* was newly decided at the time of the suppression hearing in this matter and that the trial court pointed to legitimate concerns presented by drunk drivers who flee from police. However, once the police followed the suspect into the driveway and he exited his vehicle, the public danger posed by the potential OVI was over. *See Welsh*, 466 U.S. at 743, 104 S.Ct. 2091, 80 L.Ed.2d 732. Without diminishing the seriousness of drunk driving, we must uphold the constitutional protections afforded by the Fourth Amendment, which "draw[s] a firm line at the entrance to the house." *Lange*, 594 U.S.__, 141 S.Ct. at 2018, 210 L.Ed.2d 486, quoting *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Given the constitutional interest at stake, the United States Supreme Court has repeatedly declined to expand the scope of the exception to the warrant requirement to enter a home and has expressed that it is "not eager— more the reverse—to print a new permission slip for entering the home without a warrant." *Id*. at 2019. Although "[a] great many misdemeanor pursuits involve exigencies allowing warrantless entry[,]" "whether a given one does so turns on the particular facts of the case." *Id*. at 2016.

{¶ 31} In this case, the city had the burden of showing that the warrantless entry fit within the exigent-circumstances exception to the Fourth Amendment's warrant requirement.[5] Although the police were pursuing a possible intoxicated driver who fled into his home, the totality of the circumstances shows no exigency to justify the warrantless home entry in this case.

{¶ 32} The record shows that Patrolman Cummings had initiated a traffic stop after a motorist report of a possible intoxicated driver. After Roberts pulled into the nearby driveway, he exited his vehicle and hurriedly entered the home that was associated with the vehicle. Patrolman Cummings testified that he did not have probable cause for an OVI arrest when Roberts exited his vehicle. Patrolman Cummings, without asking for consent to enter, caught the door to the home as it was closing and entered immediately after Roberts. Patrolman Cummings testified that he entered the home because he was in hot pursuit of a possible intoxicated driver. He pointed to no exigent circumstances that would justify the warrantless entry. Although he testified that he did not know whether anyone was in harm's way, he conceded that he was responding to a suspected OVI, the suspect did not appear to have anything in his hands and made no threatening moves, the officers followed immediately behind Roberts into the home and did not feel the need to pull a taser or a handgun or to radio for backup, nothing indicated Roberts did not belong at the home, there were no signs of distress in the home, none of the occupants were

_____

[5] The city did not assert any other exception applied.

asking for help in the home, and there was no testimony that the police were concerned about Roberts's escape. As the trial court observed at the close of the hearing, "what you really had was an intoxicated driver who was avoiding apprehension." Patrolman Cummings conceded that he could have asked for the person he was chasing to come out of the home and that he had the ability to contact his supervisor to obtain a warrant.[6]

{¶ 33} The trial court found that "the officer pursuing a defendant for being 'all over the road' could be pursuing a felon" and "based on the potential danger in this case to others and the potential that indeed a felony [and] not a misdemeanor had been committed, * * * that the facts support the police officer's pursuit of the defendant into the home where he fled." However, Patrolman Cummings testified that when Roberts fled into the home, he only had probable cause to believe Roberts had committed misdemeanor offenses. No evidence was presented indicating a risk of imminent harm of violence to the occupants in the home, a threat to the officer himself, or a need to prevent the destruction of evidence or escape from the home. Although the flight may well have been an attempt to evade the police investigation of a potential OVI, this did not justify police conduct that violated constitutional protections. Relatedly, in *McNeely*, 569 U.S. at 151-156, 133 S.Ct. 1552, 185 L.Ed.2d 696, the United States Supreme Court rejected an argument that the natural

---

[6] Conceivably, in today's modern world, the police could have obtained a warrant and then done field sobriety testing, done a blood draw, and/or offered a breathalyzer test without violating any Fourth Amendment right.

dissipation of alcohol in a drunk-driving suspect's bloodstream constitutes a per se exigency that categorically justifies warrantless BAC testing. *See also Welsh*, 466 U.S. at 754, 104 S.Ct. 2091, 80 L.Ed.2d 732 (finding a state's asserted need to ascertain the petitioner's blood-alcohol level did not justify a warrantless home entry).

{¶ 34} The trial judge in this case is a well-reasoned, seasoned jurist. We do not take lightly reversing her assessment of the facts in this case. Likewise, the officer was just trying to do his job protecting the community in a manner he deemed appropriate given the conditions at the time. Nevertheless, we must be concerned with the bigger constitutional question this case raises. For the Fourth Amendment to have any viability beyond the words it expresses on paper, a line must be drawn.

{¶ 35} Under the particular facts of the case, the city did not demonstrate an exigency that created a compelling law enforcement need for officers to make a warrantless home entry while in pursuit of a misdemeanant suspect. Because the nature of the crime, the nature of the flight, and surrounding facts presented no such exigency, the warrantless home entry by police violated the Fourth Amendment.

{¶ 36} Accordingly, we sustain the assignment of error. Upon remand, the trial court shall vacate Roberts's conviction, enter an order suppressing any evidence obtained as a result of the warrantless entry, and conduct further proceedings in the matter.

{¶ 37} Judgment reversed; case remanded with instructions.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. Case remanded to the trial court.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., CONCURS IN JUDGMENT ONLY and
EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY